UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 2022-cv-20531-JAL

OMEGRA SHIPPING PTE LTD OF SINGAPORE,

                Plaintiff,

v.

WORLD FUEL SERVICES (Singapore)
PTE LTD,

                Defendant.     /

## AMENDED COMPLAINT

Plaintiff, Omegra Shipping Pte Ltd. of Singapore ("Omegra"), by and through its attorneys, and for its Complaint against Defendant, World Fuel Services (Singapore) Pte Ltd ("WFS") alleges as follows:

### NATURE OF THE ACTION

1.     This action arises from the sale of marine fuel bunkers by WFS to Omegra that were physically supplied and delivered to Omegra by Sentek.

### JURISDICTION AND VENUE

2.     This action arises within this Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333 and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because the parties agreed to resolve any disputes arising out of their contract by irrevocably and exclusively submitting to the jurisdiction of a court in Miami, Florida.

1

**THE PARTIES**

4.      Omegra is a foreign corporation organized under the laws of Singapore, with a principal place of business of 10, Collyer Quay #15-08, Ocean Financial Centre, Singapore 049315.

5.       WFS is a corporation organized and existing under the laws of Singapore that agreed, pursuant to Section 19 of *Exhibit C*, to irrevocably submit to the jurisdiction of a state or federal court of competent jurisdiction in Miami-Dade County, Florida to resolve any and all disputes concerning quality or quantity of its sale or supply.

**STATEMENT OF FACTS**

6.      At all relevant times, Omegra was the time charterer of the *M/V FORTUNE IRIS*, IMO No. 9340556, a bulk carrier vessel flagged under the laws of Hong Kong, China (the "Vessel").

7.      At all relevant times, the Vessel was owned by White Lilac Shipping S.A. ("Owners"). Owners and Omegra entered into a time charter party dated May 8, 2018, a true and accurate copy of which is submitted herewith as *Exhibit A* and made a part hereof (the "Time Charter").

8.      At all relevant times, WFS is and was a seller of marine fuel to the Vessel.

9.      At all relevant times, Sentek Marine and Trading Pte Ltd. ("Sentek") is and was a foreign corporation organized under the laws of Singapore that WFS arranged to be the physical supplier and deliverer of marine fuel to the Vessel.

10.      On September 10, 2021, Omegra and WFS entered into a contract for the sale of marine fuel for the Vessel which was memorialized by a Bunker Sale Confirmation email submitted herewith as *Exhibit B* and made a part hereof ("Marine Fuel Contract").

11.     The Marine Fuel Contract incorporated the "WFS Marine Group of Companies General Terms and Conditions," a true and accurate copy of which are submitted herewith as **Exhibit C** and made a part hereof (the "WFS Terms").

12.     Sentek delivered the marine fuel to the Vessel in Singapore on September 24, 2021 (the "Bunkers"). At the time the Bunkers were delivered to the Vessel and pursuant to Clause 6(b) of the WFS Terms, samples were supposed to be taken from the marine fuel and given to the receiving Vessel, the bunker tanker, the bunker surveyor, and the testing laboratory. A copy of the Bunker Delivery Note is submitted herewith as **Exhibit D** and made a part hereof.

13.     Pursuant to the Bunker Sale Confirmation (**Exhibit B**), the Bunkers needed to meet the requirements for marine distillate fuels pursuant to the ISO 8217 2010 Fuel Standard.

14.     On or about September 28, 2021, Owners notified Omegra that the analysis of the sample with seal n. 4437256/A780024 (the "Viswa Sample") revealed that the Bunkers were off specification with respect to water, aluminum, and silicon levels found in the sample. The Viswa Sample failed to meet required specifications under the Time Charter between Owners and Omegra, and therefore the entire supply of fuel from WFS was unfit for use.

15.     On or about October 27, 2021, a second sample with seal n. 4437253 - but with no counter-seal from the Vessel - that was purported by WFS to be from the same sale and delivery was tested (the "Supplier Sample"). There, the analysis revealed that the Bunkers were on-specification for water, aluminum, and silicon levels.

16.     On or about November 2, 2021, Owners made available for testing a sample with seal n. A780022 – but with no counter-seal from Sentek (the "1st CCIC sample"). There, the analysis revealed that the Bunkers were off-specification for water, aluminum, and silicon levels.

17.     On or about November 16, 2021, Owners made available for testing yet another sample with Sentek's seal n.4437251 (the "2nd CCIC sample") which was found to be off specification for water, aluminum, and silicon levels. WFS was invited to witness the testing but refused to do so.

18.     Upon further inspection, it became apparent to Owners and Omegra that the Supplier Sample came from a different source than the Bunkers supplied to the Vessel and collected by continuous drip at the Vessel's manifold as recorded in the Bunker Delivery Note.

19.     On or about September 28, 2021, Omegra notified WFS that the Bunkers did not meet the required specifications, that they affected the normal operations of the Vessel, and that Omegra reserved all its rights and remedies as a result.

20.     On or about November 16, 2021, Omegra notified WFS that the Supplier Sample was not from the same source as the Viswa Sample, the 1st CCIC Sample, and the 2nd CCIC Sample.

21.     On or about December 1, 2021, WFS denied Omegra's claim regarding the marine fuel.

22.     Because the Bunkers were off-specification, Owners refused to consume them. As a result, Omegra was unable to fix the Vessel from 22 October 2021/06:21hrs to 25 November 2021/00:01hrs (33.74 days) until the Bunkers were de-bunkered. In addition, the Vessel was forced to consume alternative sources of marine fuel to sail to Singapore and, subsequently, the Straits of Malacca to undertake de-bunkering operations. Omegra also incurred significant costs to undertake testing of the various samples.

23.     Once de-bunkered, the Bunkers were tested on 24 November 2021 and were again found to be off specification for water, aluminum, and silicon levels.

24.     In addition, Omegra is liable under the Time Charter to pay to the Owners hire and other expenses relating to the Bunkers during the period in question for which they are entitled to seek an indemnity, contribution, and damages from WFS.

25.     Pursuant to Section 6(e) of the WFS Terms, Omegra has six months following delivery date to file an action against WFS hereunder (up to March 24, 2022), as follows:

> In any event, should any timely claim submitted by Buyer not be settled to Buyer's satisfaction in a commercial manner, any legal action by Buyer thereon shall be formally waived and time barred unless commenced under Clause 18 (Law and Jurisdiction) within six (6) calendar months after the delivery date or, in claims related to non-delivery, within six (6) calendar months after the scheduled delivery date.

## COUNT I

### BREACH OF CONTRACT

26.     Omegra repeats and realleges each and every allegation set forth in paragraphs 1 through 25 as though fully set forth herein.

27.     Omegra and WFS entered into the Marine Fuel Contract.

28.     Pursuant to the Marine Fuel Contract, WFS agreed to provide marine fuel in accordance with the agreed-to specifications that could safely be consumed by the Vessel.

29.     Pursuant to the Marine Fuel Contract, WFS agreed to advise of any quality issues with the marine fuel it provided to the Vessel.

30.     The Bunkers failed to meet the requirements identified in the Marine Fuel Contract, as stated above.

31.     WFS breached its agreement with Omegra by providing marine fuel that did not meet the agreed to specifications in the Marine Fuel Contract.

32.     WFS breached its agreement with Omegra by failing to advise Omegra of the issues regarding the quality of the marine fuel it supplied.

33.     Omegra has duly performed all duties and obligations on its part to be performed.

34.     As a result of WFS's breach, Omegra has incurred losses and damages in an amount currently estimated to be $1,300,000, exclusive of interests and costs.

## COUNT II

### NEGLIGENCE

35.     Omegra repeats and realleges each and every allegation set forth in paragraphs 1 through 25 as though fully set forth herein.

36.     As a supplier of marine fuel, WFS had a duty to provide Omegra with marine fuel that was suitable and safe for use, and within the required and agreed-to specifications for the Vessel.

37.     WFS breached this duty by delivering marine fuel to the Vessel that was unsuitable, unsafe, and did not conform with applicable specifications.

38.     As a direct result of WFS's breach of its duties and obligations, the Vessel has suffered from disruption or delay of operations, and other losses resulting from the supply of off-spec marine fuel.

39.     Omegra has duly performed all duties and obligations on its part to be performed.

40.     As a result of WFS's breach, Omegra has incurred losses and damages in an amount currently estimated to be $1,300,000.

## COUNT III

### FRAUD

41.     Omegra repeats and realleges each and every allegation set forth in paragraphs 1 through 25  as though fully set forth herein.

42.     WFS, by providing a sample of marine fuel for testing that was not from the off-spec marine fuel that it sold Omegra, made a false statement concerning material fact.

43.     Sentek, by providing a sample of marine fuel for testing that was not from the off-spec marine fuel that WFS sold Omegra and that Sentek physically supplied and delivered to Omegra, made a false statement concerning material fact.

44.     Based on information and belief, WFS and Sentek knew that the sample provided to Omegra for testing was not from the off-spec marine fuel that WFS sold Omegra and that Sentek physically supplied and delivered to Omegra.

45.     Based upon information and belief, WFS and Sentek intended that, by providing a sample for testing that was not from the off-spec marine fuel that WFS sold Omegra and that Sentek physically supplied and delivered to Omegra, Omegra would be induced not to make any claims against WFS or Sentek for the sale or supply of off-spec marine fuel.

46.     Omegra relied on WFS to provide marine fuel that met the specifications and relied on the results of the sample provided by WFS and Sentek in its decision to accept the Bunkers and, initially, object to Owners' request to de-bunker.

47.     As a direct result of WFS' and Sentek's false representations, the Vessel has suffered from disruption or delay of operations, and other losses resulting from the supply of off-spec marine fuel.

## COUNT IV

## GROSS NEGLIGENCE

48.     Omegra repeats and realleges each and every allegation set forth in paragraphs 1 through 25 as though fully set forth herein.

49.     As a supplier of marine fuel, WFS had a duty to provide Omegra with marine fuel that was suitable and safe for use, and within the required and agreed-to specifications for the Vessel.

50.     WFS breached this duty by delivering marine fuel to the Vessel that was unsuitable, unsafe, and did not conform with applicable specifications.

51.     By providing a marine fuel sample that they knew or should have known was not from the marine fuel that was sold and delivered to Omegra, WFS and Sentek were guilty of conduct that was so reckless or wanting in care that it constituted a conscious disregard or indifference to the safety and rights of Owners and Omegra.

52.     As a result of WFS' supply of off-specification marine fuel, Omegra has incurred losses and damages in an amount currently estimated to be $1,300,000.

53.     Omegra has duly performed all duties and obligations on its part to be performed.

54.     As a direct result of WFS' conduct, the Vessel has suffered from disruption or delay of operations, and other losses resulting from the supply of off-spec marine fuel supplied.

55.     As a direct result of WFS' conduct and pursuant to Fla. Sta. §768.73(1)(a), Omegra is entitled to punitive damages in the amount of three times the amount of its compensatory damages or $500,000, whichever is greater.

## PRAYER FOR RELIEF

WHEREFORE, Omegra accordingly demands a judgment against World Fuel Services (Singapore) Pte Ltd. as follows:

A.     An award of damages in favor of Omegra against WFS for all losses and damages incurred as a result of the supply of the Bunkers;

B.      An award of damages in favor of Omegra against WFS in an amount equal to indemnify Omegra for any damages it is obligated to pay to Owners, plus costs, expenses, and interest, as may be determined by this Honorable Court;

C.      An award of damages in favor of Omegra against WFS and Sentek in an amount equal to any damages it suffered directly and consequentially;

D.      Attorney's fees;

E.      Punitive damages; and

F.      Any other relief that this Honorable Court may deem to be just and proper.

Dated: March 1, 2022

Respectfully submitted,

  *//S//Jonathan S. Cooper, Esq.//*
Jonathan S. Cooper
Florida Bar Number: 99376
jcooper@shiplawusa.com
Blanck & Cooper, PA
5730 SW 74th St. Ste. 700
Miami, FL 33143
Telephone: (305) 663-0177
Facsimile: (305) 663-0146

Local Counsel for Plaintiff
OMEGRA CORP SHIPPING PTE LTD.

**Timothy McGovern**
tim.mcgovern@zeilerfloydzad.com
Zeiler Floyd Zadkovich (US) LLP
500 West Madison Street, 10th floor
Chicago, Illinois 60661, USA
Telephone: (708) 320-0010

**Zachary Barger**
zach.barger@zeilerfloydzad.com
Zeiler Floyd Zadkovich (US) LLP
500 West Madison Street, 10th floor
Chicago, Illinois 60661, USA
Telephone: (708) 320-0010

Of Counsel for Plaintiff