UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

OMEGRA SHIPPING PTE LTD OF
SINGAPORE,

                          Plaintiff,

        v.

WORLD FUEL SERVICE (Singapore) PTE
LTD,

                          Defendant.

Civil Action No. 2022-cv-20531

**<u>DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**PRELIMINARY STATEMENT** ...........................................................................................1

**ALLEGED FACTUAL BACKGROUND** ...........................................................................2

I.      WFS AGREES TO SELL FUEL TO OMEGRA ...............................................2

II.     THE PARTIES' MARINE FUEL CONTRACT ................................................2

III.    OMEGRA DISPUTES THE QUALITY OF WFS'S FUEL ...............................3

**PROCEDURAL POSTURE** ..............................................................................................4

**ARGUMENT** .....................................................................................................................5

I.      COUNT I FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ....................6

    A.    Breach: Omegra's Allegations Establish That Wfs Supplied Fuel That Met The Contract's Requirements...................................................................6

    B.    Damages: The Parties' Contract Precludes Recovery Of Omegra's Alleged Damages...............................................................................................8

II.     COUNT II FAILS TO STATE A CLAIM FOR NEGLIGENCE ......................................9

    A.    Maritime Economic-Loss Rules Bar Omegra's Negligence Claim.............................10

    B.    The Parties' Contract Precludes Recovery Of The Sought Economic-Loss Damages...............................................................................................12

III.    COUNTS III AND IV FAIL TO STATE CLAIMS FOR FRAUD AND GROSS NEGLIGENCE ...........................................................................................13

    A.    Governing Law ......................................................................................13

    B.    Application..............................................................................................14

    **CONCLUSION** .........................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Marine Tech v. World Grp. Yachting*,
    418 F. Supp. 3d 1075 (S.D. Fla. 2019) ...............................................................................11, 12

*Am. Petroleum & Transp. v. City of New York*,
    737 F.3d 185 (2d Cir. 2013)......................................................................................................10

*Brush v. Miami Beach Healthcare Grp.*,
    238 F. Supp. 3d 1359 (S.D. Fla. 2017) (Lenard, J.)..............................................................6, 8

*Ceithami v. Celebrity Cruises*,
    207 F. Supp. 3d 1345 (S.D. Fla. 2016) ....................................................................................14

*Cooper v. Meridian Yachts*,
    575 F.3d 1151 (11th Cir. 2009) .................................................................................................9

*Crenshaw v. Lister*,
    556 F.3d 1283 (11th Cir. 2009) .................................................................................................6

*Curacao Oil N.V. v. Trafigura Pte.*,
    2020 WL 3494685 (N.Y. Sup. Ct. Feb. 3, 2020), *aff'd,* 189 A.D.3d 404, 132
    N.Y.S.3d 774 (2020)..................................................................................................................7

*Deutsche Bank Nat. Tr. v. Foxx*,
    971 F. Supp. 2d 1106 (M.D. Fla. 2013)...................................................................................14

*East River Steam Ship v. Transamerica*,
    476 U.S. 858 (1986).......................................................................................................10, 11, 12

*Great Lakes Reinsurance (UK) PLC v. Sunset Harbour Marina*,
    No. 10-24469-CIV, 2011 WL 13223741 (S.D. Fla. July 1, 2011) (Jordan, J.) ................11, 12

*Heinen v. Royal Caribbean Cruises*,
    806 F. App'x 847 (11th Cir. 2020) ..........................................................................................10

*Kelly v. Lee County RV Sales*,
    819 Fed. Appx. 713 (11th Cir. 2020)........................................................................................9

*Korea Line v. World Fuel Services*,
    12-cv-20122 (S.D. Fla.), ECF No. 41 (June 30, 2015)............................................................9

*L. Luria & Son v. Alarmtec International*,
    384 So. 2d 947 (Fla. 4th DCA 1980) .......................................................................................12

*Lamm v. State St. Bank & Tr.*,
    889 F. Supp. 2d 1321 (S.D. Fla. 2012) ...................................................................16

*Louisville & N. R. v. M/V Bayou Lacombe*,
    597 F.2d 469 (5th Cir. 1979) ...................................................................................10

*Magnum Constr. v. WSP*,
    522 F. Supp. 3d 1202 (S.D. Fla. 2021) ...................................................................16

*Murphy v. Young Men's Christian Ass'n*,
    974 So. 2d 565 (Fla. 2d DCA 2008) .........................................................................9

*Myers v. Myers*,
    652 So. 2d 1214 (Fla. 5th DCA 1995)....................................................................13

*Newbauer v. Carnival*,
    26 F.4th 931 (11th Cir. 2022) ...........................................................................5, 10

*People's Tr. Ins. v. Alonzo-Pombo*,
    307 So. 3d 840 (Fla. 3d DCA 2020) .....................................................................6, 9

*Prentice v. R.J. Reynolds Tobacco*,
    No. SC20-291, 2022 WL 805951 (Fla. Mar. 17, 2022).........................................15

*R/V Beacon, LLC v. Underwater Archeology & Exlp.*,
    No. 14-cv-22131, 2014 Wl 4930645 (S.D. Fla. Oct. 1, 2014)...............................11

*Rana Fin. v. City Nat'l Bank of New Jersey*,
    347 F. Supp. 3d 1147 (S.D. Fla. 2018) ..............................................................14, 15

*Robins Dry Dock & Repair Co. v. Flint*,
    275 U.S. 303 (1927)...........................................................................................10, 11

*Scott v. Experian Info.*,
    2018 WL 3360754 (S.D. Fla. June 29, 2018) ......................................................6, 16

*Sempra Energy Trading v. BP Prod. N. Am.*,
    860 N.Y.S.2d 71 (N.Y. App. Div. 2008) .................................................................7

*Sinaltrainal v. Coca-Cola*,
    578 F.3d 1252 (11th Cir. 2009) ...............................................................................16

*Trans-Tec Int'l v. TKK Shipping (PTE)*,
    1:18-cv-23199-KMW (S.D. Fla.), ECF No. 81 (Nov. 25, 2020)............................11

*VL8 Pool v. Glencore*,
    No. 20-CV-2053-ALC, 2021 WL 6113981 (S.D.N.Y. Dec. 27, 2021)...................17

**Statutes**

Fla. Stat. § 768.72(2)(b) ..................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 9(b) .................................................................................6, 14, 15, 16

Fed. R. Civ. P. 10(c) .......................................................................................................6

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 5, 6

Local Rule 7.1(a)(1).......................................................................................................1

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1(a)(1), Defendant World Fuel Services (Singapore) PTE LTD ("WFS") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint filed by Plaintiff Omegra Shipping PTE LTD of Singapore ("Omegra") on March 1, 2022, ECF No. 4 ("Am. Compl.").

## PRELIMINARY STATEMENT

This action is fundamentally a maritime breach of contract case. The rest is simply noise.

Omegra presents in its Amended Complaint a fairly straightforward breach of contract claim. Omegra, as buyer, contracted with WFS, as seller, for the purchase of marine fuel for use by a vessel that was temporarily chartered by Omegra. Omegra claims the fuel that WFS provided did not meet the contract's specifications, and thus WFS breached the parties' contract. But the parties' contract expressly provides that the fuel's quality is determined by a particular fuel sample, a sample that Omegra admits fell within the contract's quality requirements. Moreover, the economic-loss damages that Omegra seeks to recover are expressly precluded under the parties' contract. Omegra accordingly fails to state a claim for breach of contract (Count I).

In an attempt to avoid the inevitable dismissal of this action, Omegra advances claims for negligence, gross negligence, and fraud. These claims are solely directed at circumventing the contract's express terms that determine the fuel's quality and limit WFS's liability. None of the claims, however, are viable.

Omegra's negligence claim (Count II) is simply its breach of contract claim couched as a tort cause of action and is barred under well-established maritime economic-loss rules. Further, Omegra's fraud and gross negligence claims (Counts III and IV) are both based on the same alleged fraudulent conduct. Omegra asserts—solely on "**information and belief**"—that the representative fuel sample identified in the parties' contract as determinative of the fuel's quality was fraudulently fabricated in an effort to deceive Omegra and prevent it from advancing a claim against WFS.

Among other issues, Omegra's fraud and gross negligence allegations are conclusory and not pled with the required particularity.

Accordingly, and for all of the reasons stated below, WFS's motion should be granted and the Amended Complaint dismissed in full.

## ALLEGED FACTUAL BACKGROUND

### I.   WFS Agrees To Sell Fuel To Omegra

Omegra entered into a time charter agreement with White Lilac Shipping S.A. ("Owners"), the owner of *M/V Fortune Iris* (the "Vessel").  *See* Am. Compl. ¶¶ 6–7.  Omegra does not own the Vessel.  *Id.*  Rather, as time charterer, Omegra temporarily directs the Vessel's destinations, routes, and, among other things, is responsible for procuring fuel for the Vessel during the charter period. See Am. Compl., Ex. A ¶ 7.

WFS is a seller of marine fuel for vessels (often referred to as "Bunkers").  *Id.* ¶ 8.  On September 10, 2021, WFS agreed to sell fuel to Omegra for use by the Vessel (the "Marine Fuel Contract").  *Id.* ¶ 10.  However, WFS does not supply fuel itself.  Accordingly, WFS entered into a separate agreement with Sentek Marine and Trading Pte Ltd. ("Sentek") to physically supply and deliver fuel to the Vessel.  *Id.* ¶ 9.

### II.   The Parties' Marine Fuel Contract

The Marine Fuel Contract includes the Bunker Sales Confirmation (Am. Compl., Ex. B) and the "WFS Marine Group of Companies General Terms and Conditions" (*id.*, Ex. C), the terms of which are fully incorporated into the contract, *see* Am. Compl. ¶¶ 10, 11.  This collective Marine Fuel Contract contains three provisions pertinent to this action.

First, the contract requires that the fuel conform to the International Standards Organization ("ISO") 8217:2010 specification, which caps the aggregate levels for aluminum and silicon as well as water content in the fuel.  *Id.* ¶ 13 & Ex. B at 1.

Second, the contract expressly defines the process by which the parties were to determine whether the sold fuel met the above ISO specification in the event that Omegra disputed the fuel's quality. The contract provides that WFS or its physical supplier (*i.e.*, Sentek) would collect samples of the fuel at delivery, and that the samples retained by WFS or Sentek would conclusively determine the fuel's quality:

> In the event of a claim by Buyer [based on] an analysis result showing that any agreed specification parameter(s) has exceeded the confidence level(s) according to the relevant sections on precision and interpretation of test results in the ISO 4259 standard, the sample(s) in Seller's or it physical supplier's possession shall be tested for the allegedly off-specification parameters only and analyzed by an independent surveyor located in the country (and where available, port) of supply, whose results shall be conclusive and binding on both Buyer and Seller, absent fraud or manifest error.

Am. Compl., Ex. C ¶ 6(b). The contract further provides that any samples drawn "at any date after delivery shall not be valid as an indicator of the quality of the Products supplied." *Id.* ¶ 6(c).

Third, in the event of a dispute between the parties, Omegra expressly agreed to limit its damages to compensatory damages, capped at the price that it paid for the fuel:

> SELLER'S LIABILITY FOR ANY CLAIMS, WHETHER ARISING FROM QUALITY, QUANTITY . . . OR ANY OTHER CAUSE EITHER IN CONTRACT OR TORT (INCLUDING NEGLIGENCE), SHALL NOT EXCEED THE PRICE OF THAT PORTION OF THE PRODUCTS SOLD ON WHICH LIABILITY IS ASSERTED. FURTHERMORE, NEITHER THE SELLER NOR ITS PHYSICAL SUPPLIER SHALL HAVE ANY LIABILITY TO THE BUYER UNDER OR IN CONNECTION WITH ANY TRANSACTION FOR (1) ANY DEMURRAGE, OFFHIRE OR OTHER VESSEL DELAYS OR (2) LOSS OF ACTUAL OR ANTICIPATED PROFIT OR (3) LOSSES CAUSED BY BUSINESS INTERRUPTION OR (4) LOSS OF GOOD WILL OR REPUTATION OR (5) FOR INDIRECT, SPECIAL, INCIDENTAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES WHETHER OR NOT FORESEEABLE . . . .

*Id.* ¶ 6(g).

## III.    Omegra Disputes The Quality Of WFS's Fuel

On September 24, 2021, Sentek supplied the Vessel with fuel and collected samples of the fuel at delivery, retaining two samples in its possession. *See* Am. Compl. ¶ 12 & Ex. D (the

"Bunker Delivery Note" or "BDN").[1]  Shortly after delivery, Owners and, in turn, Omegra began to dispute the fuel's quality.[2]  *Id.* ¶ 14.  The sample retained by Sentek (the "Supplier Sample") revealed that the fuel conformed to the contract's ISO specifications.  *Id.* ¶ 15.  The other samples—samples that were in Owners' possession as well as samples that Owners collected after delivery (*see supra* note 1)—did not.  *Id.* ¶¶ 14, 16, 17, 23.  Omegra alleges, without detail, that it became "apparent to Owners and Omegra that the Supplier Sample came from a different source than the Bunkers supplied to the Vessel[.]"  *Id.* ¶ 18.

Owners ultimately refused to consume the fuel, and, as a result, Omegra alleges that it was unable to "fix" the Vessel (*i.e.*, rent the Vessel to a third party) for one month until after the fuel was removed (a process referred to as "de-bunkering").  *Id.* ¶ 22.

## PROCEDURAL POSTURE

On February 22, 2022, Omegra commenced this action, seeking monetary damages for the economic loss it incurred in addressing the purported issues that Owners experienced with the fuel that WFS sold Omegra.

Omegra asserts that WFS breached the Marine Fuel Contract by supplying fuel to the Vessel (*i.e.*, Bunkers) that did not conform to the contract's ISO specifications.  *See* Am. Compl. ¶¶ 26–34.  Omegra specifically alleges that, based on testing of samples in Owners' possession, WFS sold fuel that had too much water content as well as aluminum and silicon.  *See id.*  Omegra

---

[1]      The BDN reflects that two samples (bearing seal ## 4437253 and 4437254) were retained by the "Bunker Tanker" (*i.e.*, Sentek).  The BDN further reflects that the other alleged samples were retained by the Vessel and were otherwise in Owners' possession.

[2]      Although not material to this motion, it is WFS's understanding that the fuel quality requirements in Omegra's agreement with Owners does not match the quality requirements in Omegra's agreement with WFS, which ultimately led to the instant dispute.  *See* Am. Compl. ¶ 14 (alleging that testing on certain samples "failed to meet [the] required specifications under the Time Charter between owners and Omegra").

also alleges that it incurred economic damages in resolving this purported breach, including costs and losses associated with removing the fuel from, and its inability to use the, Vessel. *See id.* ¶¶ 22, 24, 34, 40. Omegra does not, however, allege that the Vessel was physically damaged or that the Vessel even used the fuel. In any event, Omegra asserts that WFS is liable for breach of contract and negligence. *See id.* Counts I & II.

Additionally, Omegra asserts that the sample retained by Sentek and provided for testing (the Supplier Sample)—the sample that "revealed that the Bunkers were on-specification"—was, on "**information and belief**," fabricated in an attempt to deceive Omegra and prevent it from advancing claims against WFS. *Id.* ¶¶ 18, 43, 51. Based on these allegations concerning the authenticity of the Supplier Sample, Omegra claims that WFS is liable for fraud and gross negligence. *See id.* Counts III & IV. In addition to the above-discussed damages, Omegra seeks punitive damages in connection with its gross negligence claim. *Id.* ¶ 55.

## ARGUMENT

Omegra's Amended Complaint should be dismissed in full because it pleads no viable cause of action.

A claim should be dismissed where it fails to allege "sufficient factual matter" that, if "accepted as true," would "state a claim to relief that is plausible on its face." *Newbauer v. Carnival*, 26 F.4th 931, 934–35 (11th Cir. 2022) (quoting *Iqbal*, affirming dismissal in maritime action); Fed. R. Civ. P. 12(b)(6). A claim is not facially plausible where the "plaintiff's factual allegations" are "merely consistent with" the defendant's liability such that liability is "no more than a sheer possibility." *Newbauer*, 26 F.4th at 934–35.

Further, a "complaint that provides 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' is not adequate to survive a Rule 12(b)(6) motion to dismiss[,]" and, relatedly, if allegations are "more conclusory than factual, then the court does not have to

assume their truth." *Id.* (collecting cases). Accordingly, assertions made on "information and belief" are "conclusory" and are thus "not entitled to a presumption of truth" where the complaint fails to allege the underlying "factual information" reasonably supporting the asserted "belief." *Scott v. Experian Info.*, 2018 WL 3360754, at *6–7 (S.D. Fla. June 29, 2018) (collecting cases). That is, a plaintiff may not hide speculative claims behind hedged assertions. The plaintiff must plead known facts supporting each claim. Moreover, in "alleging fraud[,]" the "circumstances constituting fraud" must be stated with "particularity[.]" Fed. R. Civ. P. 9(b).

Finally, "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, "when the exhibits" to a complaint "contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (collecting cases).

Here, Omegra fails to meet its pleading burden on each count.

## I.      Count I Fails To State A Claim For Breach Of Contract

A breach of contract claim should be dismissed where, like here, the plaintiff fails to allege sufficient facts plausibly supporting "(1) a valid contract; (2) a material breach; and (3) damages." *Brush v. Miami Beach Healthcare Grp.*, 238 F. Supp. 3d 1359, 1366–68 (S.D. Fla. 2017) (quotation omitted) (dismissing breach of contract claim) (Lenard, J.); *People's Tr. Ins. v. Alonzo-Pombo*, 307 So. 3d 840, 842 (Fla. 3d DCA 2020) (same). Count I fails on the last two elements (breach and damages).

### A.      <u>Breach</u>: Omegra's Allegations Establish That WFS Supplied Fuel That Met The Marine Fuel Contract's Requirements

Omegra fails to allege facts plausibly supporting a breach.

Omegra claims that WFS breached the Marine Fuel Contract by providing fuel that failed to meet the agreed specification for maximum aluminum and silicon levels as well as high water

content.  Am. Compl. ¶¶ 28–32.  The parties' contract, however, identified the specific sample of fuel that would conclusively define the fuel's quality.  *Id.*, Ex. C ¶ 6(b).  Omegra acknowledges that the agreed representative sample—the Supplier Sample in Sentek's possession (the only sample that matters per the contract's express terms)—revealed that the Bunkers were on specification.  Am. Compl. ¶ 16.  This process—set forth in Clause 6(b) of the parties' contract— is the *only* process by which to determine the fuel's quality.  Under Omegra's own allegations, then, WFS sold fuel that was on specification as defined by the parties' agreement such that WFS did not breach the Marine Fuel Contract.  *See, e.g.*, *Sempra Energy Trading v. BP Prod. N. Am.*, 860 N.Y.S.2d 71, 72 (N.Y. App. Div. 2008) (affirming dismissal of breach of contract claim, enforcing bunker contract's sample and testing provisions where allegations and documents attached to the complaint reflected that the controlling fuel sample met the contract's fuel specifications); *Curacao Oil N.V. v. Trafigura Pte.*, 2020 WL 3494685, at *5–7 (N.Y. Sup. Ct. Feb. 3, 2020) (same), *aff'd*, 189 A.D.3d 404, 132 N.Y.S.3d 774 (2020).

Omegra nevertheless claims that the Bunkers were off specification, relying entirely on allegations concerning the testing and analysis of samples *other* than the sample that was "conclusive and binding on both" parties.  *See* Am. Compl., Ex. C ¶ 6(b).  Omegra alleges that testing on certain samples (*i.e.*, the "Viswa Sample," the "1st CCIC sample," and the "2nd CCIC Sample") indicated that the Bunkers were off specification.  Am. Compl. ¶¶ 14, 16–17.  Omegra's own allegations, and the Bunker Delivery Note attached to the Amended Complaint (Exhibit D), however, reflect that those off-specification samples were in **Owners' possession**.  And, as discussed above, the parties' contract expressly defined the fuel's quality to be conclusively determined from the sample—and *only* the sample—in WFS's or **Sentek's possession** (*i.e.*, the Supplier Sample).  These purportedly off-specification samples are thus irrelevant to the contract.

7

Omegra further alleges that tests of samples taken from the Bunkers **after they were removed** from the Vessel also reflected off-specification fuel. *Id.* ¶ 23.  But the parties' contract expressly states that any sample drawn at any date **after delivery** "shall not be valid as an indicator of the quality of" the Bunkers.  *Id*., Ex. C ¶ 6(c).  This purportedly off-specification sample is thus also irrelevant to the contract.

 Simply put, none of the allegedly off-specification samples were samples in WFS's or Sentek's possession taken at delivery, as the contract expressly required.  The only alleged sample results that complies with the parties' contract (the Supplier Sample) "revealed that the Bunkers were on-specification[.]"  Am. Compl. ¶ 15.  Pursuant to Clause 6(b) of the parties' contract, those results are conclusive and binding.  Omegra accordingly fails to allege any basis on which to infer an actual breach of the Marine Fuel Contract.  *See Brush*, 238 F. Supp. 3d at 1366–68 (dismissing claim for failure to allege the breach of a specific contractual provision).

Omegra will inevitably argue that it could rely on its own samples to establish a breach because WFS purportedly committed fraud.  See Am. Compl., Ex. C ¶ 6(b) (sample and testing requirements inapplicable in case of fraud).  That is, according to Omegra, the plausibility of its contract claim will turn on the viability of its fraud claim.  Because Omegra's fraud claim should be dismissed (discussed below), its breach of contract claim should also be dismissed.

B.     <u>Damages</u>: The Parties' Contract Precludes Recovery Of Omegra's Alleged Damages

Omegra fails to allege facts plausibly supporting that it incurred damages.

Under the Marine Fuel Contract, WFS shall *not* be liable for "indirect, special, incidental, exemplary, punitive or consequential damages[,]" including, among other things, costs arising out of vessel delays, lost profits, and loss caused by business interruption  Am. Comp., Ex. C ¶ 6(g).  The only purported damages that Omegra alleges it suffered, however, relate to those types of

expressly excluded damages: (1) Omegra being unable to "fix" the Vessel (*i.e.*, rent the Vessel to a third party), (2) costs associated with sailing to Singapore and the Straits of Malacca to de-bunker the Vessel, (3) costs associated with testing various Bunker samples, and (4) other expenses relating to the Bunkers.  Am. Compl. ¶¶ 22, 24.  Omegra thus fails to allege any recoverable damages, a necessary element to its breach of contract claim.  *See Alonzo-Pombo*, 307 So. 3d at 842 (dismissing contract claim for failure to allege recoverable damages); *see also Korea Line v. World Fuel Services*, 12-cv-20122 (S.D. Fla.), ECF No. 41 (June 30, 2015) at 4–10 (enforcing a similar exculpatory, limitation-of-liability clause, finding the clause was clear and unequivocal (citing *Diesel v. Islander Invs.*, 271 F.3d 1318, 1324 (11th Cir. 2001))); *Cooper v. Meridian Yachts*, 575 F.3d 1151, 1167 (11th Cir. 2009) ("Florida law would give effect to the [exculpatory and limitation-on-liability] provision at issue here as the contractual language is clear and unequivocal."); *Kelly v. Lee County RV Sales*, 819 Fed. Appx. 713, 717 (11th Cir. 2020) (same); *Murphy v. Young Men's Christian Ass'n*, 974 So. 2d 565, 568 (Fla. 2d DCA 2008) (same).

Omegra will inevitably argue that WFS's purported gross negligence renders the contract's remedy limitation unenforceable.  That is, according to Omegra, the plausibility of its contract claim will turn on the viability of its gross negligence claim.  Because Omegra's gross negligence claim should be dismissed (discussed below), its breach of contract claim should also be dismissed.

***

Count I should thus be dismissed for failure to state a claim for breach of contract.

## II.    Count II Fails To State A Claim For Negligence

Omegra's negligence claim should be dismissed for two reasons.  First, Omegra's negligence claim is barred under maritime law by well-established, bright line economic-loss rules arising out of the U.S. Supreme Court's seminal decisions in *Robins Dry Dock* and *East River*. *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927); *East River Steam Ship v.*

*Transamerica Delaval*, 476 U.S. 858 (1986); *see also Heinen v. Royal Caribbean Cruises*, 806 F. App'x 847, 850 (11th Cir. 2020) (affirming dismissal of negligence claim under maritime economic-loss rule).  Second, Omegra fails to allege sufficient facts plausibly supporting that it was damaged in connection with its negligence claim.  *Newbauer*, 26 F.4th at 935 (dismissing negligence claim in maritime action for failure to state a claim, noting elements of negligence).

### A.    Maritime Economic-Loss Rules Bar Omegra's Negligence Claim

#### 1.    Count II Is Barred Under The *Robins Dry Dock* Rule

Under *Robins Dry Dock*, an unintentional maritime tort seeking recovery of economic losses should be dismissed where the plaintiff fails to allege "[1] physical injury to [2] their person or their property[.]"  *Heinen*, 806 F. App'x at 850 (quoting *Kingston Shipping v. Roberts*, 667 F.2d 34, 35 (11th Cir. 1982) (citing *Robins Dry Dock & Repair v. Flint*, 275 U.S. at 309); *see Am. Petroleum & Transp. v. City of New York*, 737 F.3d 185, 187 (2d Cir. 2013) (*Robins Dry Dock* is a "bright line rule barring recovery for economic losses caused by an unintentional maritime tort absent physical damage to property in which the victim has a proprietary interest").

Here, Omegra seeks to recover only economic losses in its negligence claim.  But Omegra neither alleges (1) that there was a physical injury to the Vessel, nor (2) that it held a property interest in the Vessel.  Indeed, Omegra affirmatively alleges the opposite—that (1) the Vessel did not consume WFS's fuel, and (2) Owners (rather than Omegra) own the Vessel.  *See* Am. Compl. ¶¶ 6–7, 22.  Count II is accordingly barred under the *Robins Dry Dock* rule and should thus be dismissed.  *See Heinen*, 806 F. App'x at 850 (affirming dismissal of negligence claim because the plaintiffs did not "allege that their out-of-pocket expenses stem from physical injury to their person or their property—they allege purely economic losses stemming from the additional time they spent" in port); *Louisville & N. R. v. M/V Bayou Lacombe*, 597 F.2d 469, 471–74 (5th Cir. 1979) (negligence claim barred under the *Robins Dry Dock* rule where the plaintiff lacked a property

interest in a damaged bridge because the plaintiff only had a right to use the bridge pursuant to a contract with the bridge's owner); *Trans-Tec Int'l v. TKK Shipping (PTE)*, 1:18-cv-23199-KMW (S.D. Fla.) ("*Trans-Tec* Action"), ECF No. 81 (Nov. 25, 2020) at 4–8 (dismissing negligence claim under the *Robins Dry Dock* rule in light of the plaintiff's "status as [the vessel's] time charterer" and not owner such that it lacked the necessary property interest, noting that "[a]ny tort committed by [the defendant] against the ship is one that the ship's owners must seek to recover for, and any contract breach must be recovered by the parties to the contract").

## 2.   Count II Is Barred Under The *East River* Rule

Under *East River*, a tort claim should be dismissed "where the basis for liability arises from a contract." *R/V Beacon, LLC v. Underwater Archeology & Exlp.*, No. 14-cv-22131, 2014 Wl 4930645, at *5 (S.D. Fla. Oct. 1, 2014) (citing *East River*, 476 U.S. at 871).  That is, a plaintiff may not "recover damages in tort for matters arising from the contract." *Great Lakes Reinsurance (UK) PLC v. Sunset Harbour Marina*, No. 10-24469-CIV, 2011 WL 13223741, at *3 (S.D. Fla. July 1, 2011) (Jordan, J.).  This rule is "designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Great Lakes Reinsurance*, 2011 WL 13223741, at *3.  A tort action is therefore barred "where a defendant has not committed a breach of duty apart from a breach of contract." *Id.* This economic-loss rule specifically applies to maritime-related torts.  *See id.* (collecting cases holding same, including *East River*); *Am. Marine Tech v. World Grp. Yachting*, 418 F. Supp. 3d 1075, 1081 (S.D. Fla. 2019) ("[T]he maritime economic loss doctrine has been expanded to reach situations where a party is attempting to bring a breach of contract action couched as a tort claim."); *R/V Beacon*, 2014 WL 49.0645, at *5 (same).

Here, Omegra's negligence claim is based on the same general allegations asserted in support of its breach of contract claim such that there is no material difference between the two

causes of action.  Omegra alleges that WFS breached a duty arising out of the parties' contract, and Omegra alleges the same exact economic-loss damages as in its contract claim.  *See* Am. Compl. ¶¶ 35–40.  Count II is accordingly barred under the *East River* rule and should be thus dismissed **with prejudice**.  *See Great Lakes Reinsurance*, 2011 WL 13223741, at *3 (dismissing gross negligence claim under *East River* because it was "simply a restatement of [the] breach of contract claim, except that it [was] re-fashioned as a tort-based cause of action[,]" which is "precisely what the [*East River* rule] was intended to prohibit"); *Am. Marine Tech*, 418 F. Supp. 3d at 1082 (same); *Trans-Tec* Action, ECF No. 49 (Jul. 29, 2019) at 5–9 & n.2 (same, finding "no material difference between [the plaintiff's] negligence claim and its breach of contract claim" in that the breach of duty (providing off-specification fuel) and damages (which were precluded under the parties' contract) were the same, dismissing claim **with prejudice** because any amendment would be futile in light of the breach of contract claim).

### B.    The Parties' Contract Precludes Recovery Of The Sought Economic-Loss Damages

Omegra also fails to allege facts plausibly supporting recoverable damages with respect to its negligence claim.  As discussed above, Omegra seeks the same exact economic-loss damages in its negligence claim as it does in its contract claim.  Am. Compl. ¶¶ 26–34 (Count I), 35–40 (Count II).  These alleged damages are expressly excluded under the parties' contract, which specifically applies to tort actions, "including negligence[.]"  *Compare Id.* ¶¶ 22, 24, 40, *with id.*, Ex. C ¶ 6(g).  Accordingly, Omegra's negligence claim should be dismissed for the same reasons discussed above regarding Omegra's breach of contract claim.  *See supra* Arg. § I.B. (failure to plead damages); *L. Luria & Son v. Alarmtec International*, 384 So. 2d 947 (Fla. 4th DCA 1980) (affirming dismissal of negligence claim in a maritime action because the parties' contract precluded recovery of the sought damages).

***

Count II should thus be dismissed for failure to state a claim of negligence.

### III.     Counts III and IV Fail To State Claims For Fraud And Gross Negligence

This section addresses both Counts III (Fraud) and IV (Gross Negligence).  The bald and un-particularized nature of Omegra's fraud and gross negligence allegations demonstrates that these claims were pled for the sole purpose of attempting to avoid provisions of the Marine Fuel Contract that are fatal to Omegra's breach of contract claim.  As demonstrated below, both of these claims should be dismissed, and the Court should disregard any argument on the part of Omegra that relies on its fraud and gross negligence allegations to avoid the contractual terms it agreed to.

### A.     Governing Law

A fraud claim should be dismissed where, like here, the plaintiff fails to allege sufficient facts plausibly supporting "(a) that there was a misrepresentation of a material fact; (b) that the defendant knew the falsity of the representation; (c) that the defendant made the representation intending that the plaintiff would rely on it in doing an act desired by the defendant; and (d) that the plaintiff's reliance caused damage." *Myers v. Myers,* 652 So. 2d 1214, 1215 (Fla. 5th DCA 1995) (citing *Joiner v. McCullers,* 28 So. 2d 823 (Fla. 1947)).

A gross negligence claim should be dismissed where, like here, the plaintiff fails to allege sufficient facts plausibly supporting that the defendant's negligence (discussed above) amounted to recklessness, in that the plaintiff failed to plead "(1) the existence of a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than the normal and usual peril; (2) a showing of chargeable knowledge or awareness of the imminent danger; and (3) an act of omission occurring in a manner which evinces a conscious disregard of the consequences." *Deutsche Bank Nat. Tr. v. Foxx*, 971 F. Supp. 2d 1106, 1117 (M.D. Fla. 2013) (citation omitted); Fla. Stat. § 768.72(2)(b) ("'Gross negligence' means that the

defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct."). Plaintiffs often attempt to satisfy this heightened form of negligence with allegations regarding fraud, as Omegra attempts to do here. *See* Am. Compl. ¶ 51.

Moreover, claims that sound in fraud should be dismissed where the plaintiff fails to plead the circumstances of the fraud with particularity, in that the plaintiff fails to specifically allege the "who, what, when, where, and how" of the fraud. *See Ceithami v. Celebrity Cruises*, 207 F. Supp. 3d 1345, 1352–54 (S.D. Fla. 2016) (citing *Garfield v. NDC Health*, 466 F. 3d 1255, 1262 (11th Cir. 2006)); Fed. R. Civ. P. 9(b).

### B.  Application

Omegra generally alleges that WFS and Sentek fabricated a sample of fuel to deceive Omegra with respect to the fuel's quality. This—Omegra asserts—reflects not only that WFS defrauded Omegra, but also that WFS was grossly negligent. Omegra's fraud and gross negligence claims are insufficiently pled.

As an initial matter, Rule 9(b)'s heightened pleading standard applies to both the fraud and gross negligence claims because, as pled, both causes of action are based on the same purported fraudulent scheme such that each cause of action sounds in fraud. *See* Am. Compl. ¶¶ 44–47, 51–55; *Rana Fin. v. City Nat'l Bank of New Jersey*, 347 F. Supp. 3d 1147, 1155 (S.D. Fla. 2018) (applying Rule 9(b) heightened pleading standard to claim for gross negligence because it was "based upon alleged fraudulent statements").

First, Omegra fails to allege how the asserted fraud in any way **caused** Omegra's alleged damages. Omegra claims that the fraudulent scheme was simply designed to prevent Omegra from asserting a claim against WFS. Am. Compl. ¶ 45. But Omegra asserts that WFS committed fraud and gross negligence by presenting the allegedly fabricated Supplier Sample for testing ***after*** the

fuel was delivered and, most importantly, *after* Omegra had already put WFS on notice of its claims that the fuel was off specification. *Id.* ¶¶ 14–15, 19.  And Omegra's damages all relate to Owners' decision not to consume the allegedly off-specification fuel, a decision that was made *before* the Supplier Sample was ever tested. *See id.* ¶¶ 15, 22.  Thus, regardless of whether the purportedly off-specification fuel was the product of fraud or not, Omegra would still have incurred the asserted damages associated with addressing the allegedly unfit fuel. *See, e.g.*, *Prentice v. R.J. Reynolds Tobacco*, No. SC20-291, 2022 WL 805951, at *4 (Fla. Mar. 17, 2022) (discussing requirement of but-for causation in common law fraud claims).

Second, Omegra fails to specifically allege who created the purportedly false sample of fuel, when that sample was created, where it was created it, how it was created, or any other facts regarding the circumstances of the allegedly fraudulent scheme.  Indeed, Omegra alleges that WFS "made a false statement concerning material fact" by providing Sentek's sample for testing, but Omegra does not allege any specifics with respect to what, if any, statement WFS made about the sample, or any allegations concerning how, when, or where WFS presented the sample for testing. Am. Compl. ¶¶ 18, 44–45.  Omegra does not even allege that WFS was ever in possession of Sentek's sample.  Omegra thus fails to satisfy Rule 9(b)'s heightened pleading requirement for Counts III and IV. *Rana Fin.*, 347 F. Supp. 3d at 1155 (dismissing complaint—including claims of fraud and gross negligence—for failure to satisfy Rule 9(b)).

In this connection, Omegra attempts to skirt its pleading obligations by basing its fraud assertions on "information and belief."  Omegra asserts that, (1) on "**information and belief**," WFS knew that Sentek's sample was from a different fuel source, and (2) on "**information and belief**," WFS intended to deceive Omegra and prevent it from making a claim against WFS. *See* Am. Compl. ¶¶ 44, 45.  But Omegra fails to allege any of the underlying factual "information" that

reasonably supports any of those asserted "beliefs." Such conclusory pleading is insufficient to meet ordinary pleading standards, let alone the heightened pleading standard under Rule 9(b). *See Scott*, 2018 WL 3360754, at \*6–7 (dismissing complaint because material allegations were based entirely on "information and belief"); *Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1268 (11th Cir. 2009) (same); *Magnum Constr. v. WSP*, 522 F. Supp. 3d 1202, 1209 (S.D. Fla. 2021) (same).

Finally, Omegra fails to allege facts supporting its gross negligence claim's heightened reckless, conscious breach requirement. The asserted duty concerns taking reasonable measures to provide on-specification fuel to the Vessel. *See* Am. Compl. ¶ 49. But—notwithstanding Omegra's bald allegations that WFS provided a fraudulent sample for testing *after* the Bunkers were delivered (*see id.* ¶ 51)—Omegra does not assert any allegations that WFS knowingly *delivered* off-specification fuel or otherwise explain what WFS could have done to obtain that knowledge. In fact, Omegra alleges facts reflecting the opposite—that WFS did take reasonable care to satisfy its duties: (1) WFS's supplier (Sentek) took multiple samples of the fuel at delivery, (2) Sentek retained two samples and gave the others to Owners, and (3) the sample that Sentek retained (the contractually binding Supplier Sample) reflected that the fuel was within the contract's specification. *See id.* ¶¶ 12, 15 & Ex. D. Simply put, Omegra's gross negligence claim fails to allege what WFS should have done but failed to do to avoid the purported breach of duty. *See Lamm v. State St. Bank & Tr.*, 889 F. Supp. 2d 1321, 1329 (S.D. Fla. 2012) (dismissing gross negligence claim because the plaintiff's "allegations at most establish that [defendant] should have known of the fraud, whereas gross negligence under [Florida] law requires a *conscious* disregard of one's duties" (citing *Cent. State Transit & Leasing v. Jones Boat Yard,* 206 F.3d 1373, 1377 (11th Cir. 2000)); *see also VL8 Pool v. Glencore*, No. 20-CV-2053-ALC, 2021 WL 6113981, at \*2–3 (S.D.N.Y. Dec. 27, 2021) (dismissing gross negligence claim because the plaintiff failed

to allege sufficient facts plausibly supporting that, at the time of delivery, the defendant knew or should have known that the marine fuel was off-specification).

***

Counts III and IV should thus be dismissed for failure to state a claim of fraud and gross negligence, respectively.[3]

<u>**CONCLUSION**</u>

For the reasons discussed above, the Amended Complaint should be dismissed in full, and Count II (Negligence) should specifically be dismissed **with prejudice**.

Dated: Miami, Florida
        May 13, 2022

**HOLLAND & KNIGHT LLP**

By: /s/ Adolfo Jimenez

Adolfo Jimenez, FL Bar No. 869295
701 Brickell Avenue, Suite 3300
Miami, Florida  33131
Telephone: (305) 789-7720
Adolfo.Jimenez@hklaw.com

Michael J. Frevola, *pro hac vice*
F. Robert Denig, *pro hac vice*
31 W. 52nd St. 12th Fl.
New York, NY  10019
Telephone: (212) 513-3200
Michael.Frevola@hklaw.com
Robert.Denig@hklaw.com

*Attorneys for Defendant World Fuel Services (Singapore) PTE LTD*

---

[3]    In the event the Court dismisses either Count III or IV, it should also dismiss Count I, as discussed at the conclusion of Sections I.A. and I.B. above.