UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 2022-cv-20531-JAL

OMEGRA SHIPPING PTE LTD OF SINGAPORE,

    Plaintiff,

  v.

WORLD FUEL SERVICES (Singapore)
PTE LTD,

    Defendant.   /

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS THE AMENDED COMPLAINT (DKT. 16) AND SUPPORTING
MEMORANDUM OF LAW**

NOW COMES Plaintiff, Omegra Shipping Pte Ltd. of Singapore ("Omegra" or "Plaintiff"), by and through its undersigned counsel, and files its Response in Opposition to Defendant World Fuel Services (Singapore) Pte Ltd.'s ("Defendant" or "WFS") Motion to Dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and Local Rule 7.1(a)(1) (Dkt. 16; "Defendant's Motion"). For the reasons stated in the Memorandum that follows, Defendant's Motion should be denied in its entirety.

**PRELIMINARY STATEMENT**

Based upon Defendant's Motion's Preliminary Statement, the Parties are clearly aligned about one key point: this action is fundamentally about a breach of maritime contract. As the Amended Complaint fully details, Defendant agreed to sell marine fuel (also referred to as "bunkers") of a certain quality and quantity to Omegra in exchange for payment. In making said payment, Omegra fulfilled all of its contractual duties. Defendant did not.

1

Instead, either acting individually or through its physical supplier, Sentek Marine and Trading Pte Ltd. ("Sentek"), Defendant sold and delivered marine fuel to Omegra that was off specification for water, aluminum, and silicon levels. More troubling yet, certain samples that Defendant represented had been taken from the marine fuel sold pursuant to the Parties' contract met the requisite specification, while others did not. It was only through months of careful analysis and inspection that Omegra realized what had occurred: the sample that met the specification came from a different source than the marine fuel that was actually supplied to Omegra.

After carefully analyzing all of the information currently available to Omegra, the evidence clearly suggests that Defendant or its agent/representative took steps to cover up its breaches of the agreement between the Parties. Moreover, Defendant took affirmative steps to otherwise lead Omegra to believe that it fulfilled all of its contractual duties. Defendant's conduct breached the Parties' agreement and was either a false representation amounting to fraud under Florida law, or, at minimum, so reckless and wanting in care that it constituted a conscious disregard of Omegra's rights under the contract and, as such, amounted to gross negligence under the same.

## I. SUMMARY OF THE FACTS AND PROCEDURAL POSTURE

Defendant, through the Bunker Sale Confirmation email (*Am. Compl. (Dkt. 4) Exh. B* "Bunker Sale Confirmation") and "WFS Marine Group Companies General Terms and Conditions" (*Am. Compl. (Dkt. 4) Exh. C* "WFS Terms") entered into a contract with Omegra on September 10, 2021, whereby Defendant agreed to provide marine fuel of a particular specification to a vessel that Omegra chartered. Defendant or its agent loaded the fuel onto the vessel approximately two weeks later. *See Am. Compl. (Dkt. 4)* ¶¶10, 12. Defendant provided the marine fuel to Omegra through Defendant's physical suppler and agent, Sentek.

Days after delivery of the fuel, the owner of the vessel, White Lilac Shipping S.A. ("Owners"), notified Omegra that its sample showed that the bunkers were off-specification. *Id.* ¶¶14-17. Additional samples were subject to testing by the various parties. Peculiarly, the analysis of certain samples showed that the bunkers were on-specification (*id.* ¶15), while other analyses showed off-specification fuel (*id.* ¶¶14, 16, 17). Owners and Omegra established that the sample that was on-specification came from a different source than the bunkers that were supplied pursuant to the contract between the Parties. *Id.* at ¶18. Therefore, the samples relied upon by WFS and its agent, Sentek, were not from the fuel supplied to the vessel.

Omegra notified Defendant that the marine fuel did not meet the required specifications as necessitated by the terms of the Parties' agreement, but Defendant denied Omegra's claim. *Am. Compl. (Dkt. 4)* at ¶¶19, 21. As a direct and proximate result of Defendant and its physical supplier loading Omegra's chartered vessel with off-specification marine fuel, Omegra suffered myriad damages, including loss of use of the vessel, costs to de-bunker, costs of alternative sources of marine fuel, costs to undertake testing of the samples, and, most obviously, loss of use of the marine fuel that it paid for pursuant to the Parties' agreement. *Id.* at ¶22.

Pursuant to the WFS Terms, Omegra commenced this action within the six-month window afforded to it following delivery of the bunkers. *Exh. C* at 3-4; *Am. Compl. (Dkt. 4)* ¶25. The Amended Complaint contains four Counts, three of which are directly related to the contractual duties Defendant owed to Omegra and breached: Count I (Breach of Contract), Count III (Fraud), and Count IV (Gross Negligence). Count II (Negligence) was pled in the alternative in case the factfinder determined that there was not a valid and enforceable contract between the Parties.

After Omegra consented to an extension of time by which Defendant could respond to its Amended Complaint (*see Dkt. 10*), Defendant obtained new counsel (*see Dkt. 11*) and filed its

Motion three days later. Defendant's Motion is a blanket request for dismissal of each of the four Counts in the Amended Complaint based upon Fed. R. Civ. P. 12(b)(6) for an alleged failure to state a claim upon which relief can be granted. For the reasons that follow, Defendant's blanket motion should be denied.

## II.  LEGAL STANDARD

A complaint must contain sufficient facts, accepted as true, "to state a claim to relief that is plausible on its face" to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 127 S.Ct. 1955 (2007)). "In determining whether dismissal is warranted, the material allegations of a plaintiff's claims are taken as true and are liberally construed in favor of the plaintiff." *Bensch v. Metropolitan Dade County*, 855 F.Supp. 351, 352 (S.D. Fla. 1994); citing *Burch v. Apalachee Community Mental Health Service, Inc.,* 840 F.2d 797, 798 (11th Cir. 1988), *aff'd,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Jackam v. Hospital Corp. of America Mideast,* 800 F.2d 1577, 1579 (11th Cir. 1986) ([T]he movant sustains a very high burden "[to secure dismissal].") (citations omitted); *St. Joseph's Hosp., Inc. v. Hospital Corp. of America,* 795 F.2d 948, 954 (11th Cir. 1986); *Quality Foods v. Latin American Agribusiness Development Corp.,* 711 F.2d 989, 995 (11th Cir. 1983) (Plaintiffs' "threshold of sufficiency ... is exceedingly low.").

A motion to dismiss pursuant to Rule 12(b)(6) imposes a significant burden upon the moving party. *Id*. A court cannot grant a motion to dismiss unless the moving party shows "**beyond doubt** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50, 109 S.Ct. 2893 (1989) [emphasis added]. "The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the

statement of claim for relief. It is read alongside Rule 8(a) of the Federal Rules of Civil Procedure, which requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' This motion is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity." *Vernon v. Medical Management Associates of Margate, Inc.*, 912 F.Supp. 1549, 1553 (S.D. Fla. 1996) (internal citations omitted). Under this purview, Fed. R. Civ. P. 12(b)(6) motions, such as Defendant's, are viewed by United States District Courts with disfavor and are rarely granted. *See id.*

### III. ARGUMENT

**A. Breach of Contract**

**i. Count I of the Amended Complaint alleges facts sufficient to establish a breach of the contract by Defendant.**

In its Motion, Defendant concedes that a contract existed between the parties. (*E.g., Defendant's Motion at 2:* "The Marine Fuel Contract includes the Bunker Sales Confirmation (Am. Compl., Ex. B) and the 'WFS Marine Group of Companies General Terms and Conditions' (*id.*, Ex. C), the terms of which are fully incorporated into the contract, *see* Am. Compl. ¶¶ 10, 11. This collective Marine Fuel Contract contains three provisions pertinent to this action.") In its Motion, Defendant first argues that the Amended Complaint fails to establish that Defendant supplied fuel that did not meet the Marine Fuel Contract's specifications.

Defendant's lone argument in support of this prong of its Motion is that Clause 6(b) of the WFS Terms "is the *only* process by which to determine the fuel's quality." *Defendant's Motion at 7* [emphasis in original]. This is a gross mischaracterization of the contractual term. Clause 6(b) of WFS Terms reads as follows:

> With respect to the quality of the Products supplied, samples shall be drawn at the time of delivery by the Seller's representatives. The method of sampling will be governed by local regulation, if such exists, otherwise as per the method used by

> the local physical supplier. Buyer or its representatives may witness the sampling but the absence of Buyer or its representatives at the time of sampling shall not prejudice the validity of the samples taken. These samples shall conclusively represent the quality of the Products supplied to the Receiving Vessel. In the event of a claim by Buyer basis (*sic*) an analysis result showing that any agreed specification parameter(s) has exceeded the confidence level(s) according to the relevant sections on precision and interpretation of test results in the ISO 4259 standard, the sample(s) in Seller's or its physical supplier's possession shall be tested for the allegedly off-specification parameters only and analyzed by an independent surveyor, located in the country (and where available, port) of supply, whose results shall be conclusive and binding on both Buyer and Seller, **absent fraud or manifest error**[1]. The independent surveyor shall be appointed by the Seller, and the surveyor's fee shall be shared equally by Buyer and Seller (provided, however, if such surveyor analysis does not show any deviations from agreed-upon quality, the surveyor's fee shall be for Buyer's account).

(bold emphasis supplied) *Am. Compl. (Dkt. 4) Exh. C* at 3. Defendant, in emphasizing the "conclusive and binding" nature of the analysis of the sample in Seller's or its physical supplier's possession, asks for a total misinterpretation of this Clause 6(b) as a whole. In relation to the survey of the Seller's Sample, the phrase, "whose results shall be conclusive and binding on both Buyer and Seller, absent fraud or manifest error," *only applies to this specific sample*. Meaning that, regardless of whether the sample in Seller's or its physical suppliers' possession is found to be on specification, the other samples can be used as evidence to show that the entirety of the delivery was off specification.

When read as a whole, it was clearly the intent of the Parties' that all of the samples be open for analysis and quality-determination, as just a few sentences prior it states that "*These samples* shall conclusively represent the quality of the Products supplied to the Receiving Vessel." [Emphasis added.] It is imperative to note that "samples" is written here in the plural. More importantly, it satisfies the all-important common-sense test: what purpose would taking multiple samples serve if only one was to be "conclusive and binding" against all the others?

---

[1] Although not a defined term in the contract, "manifest" is defined Merriam-Webster as "readily perceived by the senses and especially by the sense of sight; easily understood or recognized by the mind."

At most, Clause 6(b) of the WFS terms creates a burden-shifting with respect to the independent surveyor's results of the sample(s) in Defendant's or its physical supplier's possession. As pled by Omegra – and as must be taken as true when considering a Fed. R. Civ. P. 12(b)(6) motion – the Viswa Sample, the 1st CCIC Sample, and the 2nd CCIC Sample were all shown through independent testing to not be from the same source as the Supplier Sample. *Am. Compl. (Dkt. 4)* ¶20. At minimum, even if the Court were to find that the language in Clause 6(b) renders the results of samples in WFS' or Sentek's possession as conclusive and binding in regards to the quality of the entirety of the marine fuel as sold to Omegra (a point heavily contested by Omegra), then the results of the other three samples present clear evidence of the very "fraud or manifest error" that Clause 6(b) states *removes* the conclusive/binding nature of that one sample.

In a last-ditch effort to convince this Court that it should not be found liable for either providing off-specification marine fuel or covering up the fact that it did, Defendant points to Paragraph 23 of the Amended Complaint whereby Omegra states that the marine fuel, once de-bunkered, was analyzed and found to be off-specification. This argument is wholly unconvincing when the Amended Complaint and the WFS Terms are read in their entirety. That is, while it is true that Clause 6(c) of the WFS Terms states that samples drawn after delivery "shall not be valid as an indicator of the quality of the Products supplied," Omegra's claims are based upon samples that were *drawn at the time of delivery*. *Am. Compl. (Dkt. 4)* ¶¶14, 15.

Defendant is correct that either fraud or manifest error eliminates the conclusive or binding nature of the analysis of WFS' independent surveyor per the plain language of Clause 6(b) of the WFS Terms. But Omegra's fraud count has no bearing on whether Count I (Breach of Contract) should survive. Taking all of the material facts in the Amended Complaint as true and liberally

7

construing them in Omegra's favor as the non-movant, a breach of contract by Defendant has been demonstrated:

- Omegra and Defendant entered into a contract for the sale and delivery of bunkers (uncontested by Defendant);

- Defendant owed a contractual duty to Omegra to supply bunkers of a certain specification (uncontested by Defendant); and

- Defendant breached this contractual duty, and attempted to cover this breach up, as evidenced by the analysis of the various samples (*Am. Compl. (Dkt. 4)* ¶12, 14-18).

Defendant may contest that it breached its duty owed to Omegra, but in considering its Motion under applicable review standards of Fed. R. Civ. P. 12(b)(6), the facts and reasonable inferences therefrom as pled in the Amended Complaint must be construed in Omegra's favor. *See Bensch*, 855 F.Supp. at 352 (S.D. Fla. 1994). Therefore, for purposes of the Motion, this Court should find that a breach was well-pled; Count I should survive. The damages Omegra suffered, as detailed in the section that immediately follows, are the final piece to a straightforward breach of contract claim by which relief can easily be granted. Defendant's Motion must be denied.

   **ii. The contract between the parties does not preclude the type of damages sought by Plaintiff.**

Though Omegra presented a proper claim for breach of the agreement between the Parties, Defendant still argues that Count I of the Amended Complaint should be dismissed, as Omegra "fails to allege facts plausibly supporting that it incurred damages." *Defendant's Motion (Dkt. 16)* at 8. Defendant points to Clause 6(g) of the WFS Terms which contains a standard limitation of liability clause for any amounts exceeding "the price of that portion of the products sold on which liability is asserted." *Am. Compl. (Dkt. 4) Exh. C* at 4. This clause attempts to limit the type of damages Omegra may seek, including those for "indirect, special, incidental, exemplary, punitive or consequential damages." *Id.*

Construing all facts and reasonable inferences in Omegra's favor for purposes of Defendant's Motion, the marine fuel sold by Defendant and delivered to Omegra by Defendant's physical supplier was off specification, the agreement between the parties was thus breached, and Omegra suffered direct damages by not receiving the benefit of its bargain. That is, it paid for a certain quantity and quality of marine fuel that, due to insufficient quality, it was unable to use to fuel its chartered vessel. Nowhere in the WFS Terms is Omegra prevented from recovering its direct damages (e.g., use of the product it paid for); it would be nonsensical to argue otherwise. Therefore, regardless of whether the WFS Terms' remedy limitation is enforceable based upon subsequent conduct that Omegra believes rises to the level of gross negligence, fraud, or a combination of the same, Count I of the Amended Complaint outlines a clear-cut way by which, under well-established maritime and Florida law, Omegra is entitled to the direct damages it suffered due to Defendant's breach.

Moreover, Defendant cannot rely on its own limitation of liability clause to exclude damages that it caused by its own acts of misconduct or gross negligence. Specifically, Defendant cannot rely on Clause 6(g) of the WFS Terms to limit Omegra's damages caused by Defendant providing to the vessel off-specification bunkers that Defendant and its supplier knew or should have known were unsafe to use and would cause exactly the type of damage that Defendant now seeks to limit. And as clearly alleged in the Complaint, Defendant had actual knowledge that the marine fuel it supplied to Omegra was off specification and took affirmative action to try and cover this fact up. *Am. Compl.(Dkt. 4)* ¶18.

The cases cited by Defendant in its Motion in support of this argument are readily distinguishable. *People's Trust Insurance Company v. Alonzo-Pombo*, 307 So.3d 840 (Fla. 3d DCA 2020) involved a declaratory judgment action whereby an insurance company sued its

insured homeowner for failure to file a sworn proof of loss within a contractually provided timeline. *Alonzo-Pombo*, 307 So.3d at 842. In *Korea Line Corporation v. World Fuel Services Corporation*, 14-CV-20122-CIV-WILLIAMS[2] (S.D. Fla. 2014), the issue decided upon at summary judgment was whether a limitation of liability clause is enforceable in a maritime contract, *not* whether the plaintiff is completely barred from recovery as Defendant argues here. *Kelly v. Lee County RV Sales*, 819 Fed. App. 713 (11th Cir. 2020) involved the Magnuson-Moss Act, providing a cause of action for a consumer if damaged by a supplier's breach of an implied warranty. *Kelly*, 819 Fed. App. 717 (11th Cir. 2020); citing 15 U.S.C. §2310(d)(1). In fact, the *Kelly* decision makes no mention of a lack of recoverable damages or an exculpatory clause in a contract; rather, it discusses a warrantor's ability to limit its warranty under 15 U.S.C. §2310(d). Again, this is wholly inapplicable.

What Defendant presents is nothing more than a series of red herrings from the simple facts Omegra laid out in its Amended Complaint: Omegra's inability to use the product it paid for under what the parties both agree is a maritime contract plainly demonstrates straightforward, direct damages by which relief can easily be granted. Defendant's Motion must therefore be denied.

**B. Negligence**

Defendant argues in its Motion that Count II of the Amended Complaint, at its core a claim for common law negligence, should be dismissed for two reasons: (i) economic-loss rules, and (ii) a failure to demonstrate damages in connection with the claim. As explained in more detail in the sections that immediately follow, neither argument has merit.

Although it appears in Defendant's Motion that it intends to concede that a valid contract did exist between the Parties, Defendant moved pursuant to Fed. R. Civ. P. 12(b)(6) and before a

---

[2] Incorrectly cited to in Defendant's Motion as "12-cv-20122."

10

responsive pleading has been made. Therefore, it must be assumed for purposes of the Motion that the factfinder may determine that a valid contract between the Parties did *not* exist and Count II must be considered with all facts construed and reasonable inferences made in a light most favorable to Omegra as non-movant. *Bensch*, 855 F.Supp. at 352 (S.D. Fla. 1994) (internal citations omitted).

                i.    **Maritime economic-loss rules do not bar Plaintiff's claim.**

Defendant's Motion is a clear misapplication of *Robins Dry Dock* and *East River Steamship*. The *Robins Dry Dock* holding is very straightforward: "[A] tort to the person or property of one man [the ship's owner] does not make the tortfeasor liable to another [the time charterer] merely because the injured person was under a contract with that other, unknown to the doer of the wrong." *Robins Dry Dock & Repair v. Flint*, 275 U.S. 303, 309 (1927); *see also Hercules Carriers, Inc. v. State of Fla.*, 720 F.2d 1201, 1202-1203 (11th Cir. 1983). *East River Steamship* is the leading decision on the economic loss rule in admiralty. There, in discussing product liability claims, the Court held that a maritime plaintiff may not maintain a tort cause of action "when a defective product purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 859 (1986) (emphasis added).

Here, of course, Omegra does not state that the off-specification marine fuel damaged itself; rather, it caused damages in myriad other ways. Count II of the Amended Complaint makes no mention of a tort committed against the ship itself or its owner. Rather, it states that, in supplying marine fuel to Omegra to fuel the vessel that Omegra had on time-charter, Defendant had a duty to Omegra to supply fuel that was suitable and safe for use. *Am. Compl. (Dkt. 4)* ¶36.

And in breaching this duty, Omegra suffered damages, including disruption and delay of operations and other losses resulting from the supply of off-spec marine fuel. *Id.* ¶38.

If the factfinder determines that Defendant did owe a duty to Omegra to supply marine fuel of a certain quantity and quality and that Defendant failed to do so, then Omegra would be entitled to its damages suffered as a result. For purposes of the Motion, with all facts construed and reasonable inferences made in a light most favorable to Omegra as non-movant, Omegra has overcome this low hurdle. *See Bensch*, 855 F.Supp. at 352 (S.D. Fla. 1994) (internal citations omitted). Defendant's Motion should be denied.

### ii. The contract does not preclude recovery of the sought economic-loss damages.

Because there has been no responsive pleading stipulating to as much, it is not yet known whether Defendant will contest that a valid contract exited between the Parties. Defendant's contention that the contractual limitation of liability somehow precludes damages available to Omegra under a theory of negligence commingles and otherwise confuses the issues. In any event, Omegra can overcome any purported limitation of liability in the WFS Terms by a showing of fraud or gross negligence, as more fully explained in other sections throughout this Memorandum.

Defendant's argument here is thus premature, inappropriately commingles the two distinct causes of action as pled by Omegra and should be denied.

### C. Counts III and IV were pled with as much particularity as can be reasonably expected at this point in time, and thus both Counts satisfy Fed. R. Civ. P. 9(b).

#### i. Legal Standard & Applicable Law

Fed. R. Civ. P. 9(b) requires that, when alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." But this does not require every element to be stated with particularity. Rather, the "pleader must use more than generalized or conclusory statements setting out the fraud. The pleader must state the time, the place, the contents or

substance of the false representations, the fact misrepresented, and an identification of what has been obtained." *Buckmasters, Ltd. v. Action Archery, Inc.*, 915 F.Supp. 1188, 1194 (M.D. Ala. 1996); *quoting Mays v. United Ins. Co. of America*, 853 F. Supp. 1386, 1389 (M.D. Ala. 1994) (internal citations omitted). Moreover, "Rule 9(b) does not require that the complaint explain the plaintiff's theory of the case, but only that it state the misrepresentation, omission, or other action or inaction that the plaintiff claims is fraudulent." *Id.*; *quoting Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 523 (7th Cir. 1993).

"Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992); *citing Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990); *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 288–89 (1st Cir. 1987); *In re VMS Sec. Litig.*, 752 F.Supp. 1373, 1391–92 (N.D. Ill. 1990). "As a general rule, [allegations pleaded on information and belief] will not satisfy Rule 9(b)." *Tribune Co. v. Purcigliotti*, 869 F.Supp. 1076, 1090 (S.D.N.Y. 1994); *citing Stern v. Leucadia Nat. Corp.*, 844 F.2d 997, 999 n. 1 (2d Cir. 1988), cert. denied, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). However, where "much of the factual information needed to fill out plaintiff's complaint lies peculiarly within the opposing parties' knowledge," as is often the case where fraud is involved, "the general rule disfavoring allegations founded upon belief ought not to be rigidly enforced." *Id.*; quoting *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1248 (2d Cir. 1987).

The elements that must be established to prove a claim of fraud under Florida law are: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent

injury by the party acting in reliance on the representation. *See Zamber v. American Airlines, Inc.*, 282 F. Supp.3d 1289, 1299 (S.D. Fla. 2017).

      **ii.**    **Omegra satisfied its obligation to plead with as much particularity as available to it at the time.**

Defendant requests that this Court demand Omegra do the impossible: provide information in the Amended Complaint that it does not – nor could it be reasonably expected to – have in its possession. Remarkably, Defendant argues that this Court should dismiss counts in the Amended Complaint founded on the fact that Defendant has withheld information from Omegra *because Omegra does not have the information that Defendant withheld.* Punishing Omegra for not having the information to plead with any more particularity than what has already been pled is a gross mischaracterization of the purpose and intent of the Federal Rules of Civil Procedure and otherwise defeats the purpose of the discovery process that is afforded to the parties over the course of litigation. By way of what is currently known to Omegra, the specificity requirements of pleading fraud under District Courts' interpretations of Fed. R. Civ. P. 9(b) were met as follows:

- **Who:** Defendant or its physical supplier (*Am. Compl. (Dkt. 4)* ¶12;

- **What:** provided a sample of marine fuel for testing that is *not* from the off-specification fuel that it sold to, and had loaded onto, Omegra's chartered vessel (*Id.* ¶12, 14-18);

- **When:** on or about September 24, 2021 (*Id.* ¶12);

- **Where:** in or near the Port of Singapore (*Id.*);

- **How:** and, by providing a fuel sample that Defendant or its physical supplier knew or should have known was from the fuel that was loaded onto Omegra's chartered vessel, Defendant intended that Omegra rely on its representation that the fuel was on-specification, pay for said fuel in its entirety, and either recklessly or intentionally ignored the fact that Omegra could suffer damages by attempting to use fuel that was off-specification (*Id.* ¶18).

Defendant's demand that this Court dismiss Counts III or IV because Omegra did not assert how the fraud caused its damages is a blatant misread of the allegations as pled. Omegra relied on Defendant's assertions that the fuel it provided was on specification, and thus agreed to pay for it in full and use it during the course of the vessel's operations. *See Am. Compl. (Dkt. 4)* ¶12, 45-47. By attempting to use this off-specification marine fuel, the vessel suffered from disruption and delay in operations and other losses. *Id.* ¶47. If, as alleged in the Amended Complaint, it is proven that Defendant knew the fuel was off-specification, induced Omegra to purchase it nonetheless by way of producing a false sample, and Omegra suffered damages as a result, then the elements of fraud under Florida law are clearly met. At this stage, when all facts and reasonable inferences are to be read in Omegra's favor, clearly Omegra's fraud claim should be permitted to proceed.

*Rana Fin. V. City Nat'l Bank of New Jersey*, 347 F. Supp.3d 1147 (S.D. Fla. 2018), despite being relied upon heavily by Defendant in an effort to have this Court dismiss Counts III and IV of the Amended Complaint, is not analogous to the facts as pled *sub judice*. In *Rana*, the plaintiff was a money services business who brought an action against a bank and its chief executive officer for claims arising from the business' purported investment with bank. The court in *Rana* found that the plaintiff "was required to identify each of the allegedly *fraudulent statements* and the circumstances surrounding such *statements*." *Rana*, 347 F. Supp.3d at 1155 (emphasis added). Moreover, the court found that the complaint, brought against multiple defendants, lacked particularity as to which causes of action were directed at which defendants. *See id.*

Here, WFS' fraudulent conduct was not in its *statements* (although discovery may very well demonstrate that these existed as well) but rather in the very conduct of supplying (or participating in the supply) of a fraudulent sample of marine fuel. If, as the Amended Complaint clearly alleges, WFS or its agent produced a fraudulent bunker sample (*Am. Compl. (Dkt. 4)* ¶12)

that WFS knew was fraudulent (*Am. Compl. (Dkt. 4)* ¶18) in an effort to induce Omegra to rely on the analysis to purchase and use fuel that was, in fact, off specification, then the elements of fraud, gross negligence, or both are clearly met, and Counts III and IV of the Amended Complaint should not be dismissed.

Defendant's final contention that Counts III and IV should be dismissed because they fail to support a "heightened reckless, conscious breach requirement" is just another way of arguing the same point that it raises multiple times throughout its Motion. Ultimately, Omegra's contention in Count IV, just as required under the guise of *Lamm v. State Street Bank & Trust Co.*, 889 F. Supp.2d 1321 (S.D. Fla. 2012), is that Defendant consciously disregarded its duty to (i) provide on-specification fuel to the vessel; and (ii) supply samples of the actual fuel that was delivered to the vessel in order to ensure the product's quality. And unlike in *VL8 Pool, Inc. v. Glencore Ltd.*, 2021 WL 6113981 (S.D.N.Y. 2021), where the defendant physical supplier successfully had a gross negligence claim against it dismissed when the court found that "the failure to act on two reports of possible contamination, as alleged here, would make a *plausible* showing of gross negligence," the facts as alleged in the Amended Complaint here outline a scheme whereby Defendant, as seller of the contaminated fuel, directly participated in the scheme of providing purported samples of marine fuel that were not, in fact, from the off-specification product that was being sold. When taken as true under the applicable Fed. R. Civ. P. 12(b)(6) standard, this demonstrates a conscious disregard for the consequences of falsely claiming a supply of marine fuel to be fit for consumption when it clearly is not; Omegra should thus be permitted to proceed on its Count IV.

### iii.     Alternatively, Omegra should be entitled to amend its pleadings.

In the alternative, should this Court be persuaded by Defendant's arguments, then Omegra requests leave to amend its complaint. "Plaintiffs whose complaints are dismissed pursuant to Rule 9(b) are typically given an opportunity to amend their complaint." *Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*, 136 F.3d 273, 276 (2d Cir.1998). "As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. '[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003); *quoting Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988). If this Honorable Court is inclined to hold that more specificity is needed to satisfy Fed. R. Civ. P. 9(b), then Omegra should be afforded the opportunity to do so.

## IV.     CONCLUSION

For all the aforementioned reasons, Defendant's Motion to Dismiss the Amended Complaint (Dkt. 16) should be denied in its entirety. Defendant admits that a contract existed between the Parties which means that, at minimum, Omegra outlined a series of facts in its Amended Complaint that demonstrates a breach of the Parties' agreement by Defendant and resulting damages to Omegra. This clearly allows Count I to survive a Fed. R. Civ. P. 12(b)(6) motion, where all facts and reasonable inferences are to be construed in Omegra's favor.

Defendant's arguments in support of its motion to dismiss Count II are premature, as the Parties have yet to stipulate to the fact that a valid maritime contract existed between them. In any event, the damages are separate and apart from those demanded in Count I (Breach of Contract), and the Motion should thus be denied.

Defendant's argument in support of its motion to dismiss Amended Complaint Counts III and IV – that Omegra somehow failed to meet Fed. R. Civ. P. 9(b)'s heightened pleading standard

for both fraud and gross negligence – is both a mischaracterization of this particular Federal Rule of Civil Procedure and a clear effort to penalize Omegra for not doing something that, at this preliminary stage, Omegra is simply incapable of doing. However, the facts as currently known clearly identify conduct by WFS or its agents that could be construed as falsifying fuel sample results or recklessly failing to examine the proper samples. As the matter unfolds and discovery is conducted, Omegra will have the opportunity to uncover facts that further demonstrate the "who, what, when, where, and how" of the fraud that was committed against it by Defendant or Defendant's representatives and agents. For now, having been left in the dark by Defendant about how the samples of marine fuel could be so vastly different in quality and adherence to specification, Omegra was left with no choice than to file its Amended Complaint in the manner in which it did: on information and belief. The irony of Defendant withholding information and then moving to dismiss Omegra's Amended Complaint *because it does not contain the very information that Defendant withheld* should not be lost on this Honorable Court. Instead, it should be the very reason for which Defendant's Motion is denied.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _27th____ day of _MAY___, 2022 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following: **Adolfo E. Jimenez, Esq**. Adolfo.jimenez@hklaw.com HOLLAND & KNIGHT LLP. 701 Brickell Avenue, Suite 3300 Miami, Fl 33131, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

Respectfully submitted,

*//S//Jonathan S. Cooper, Esq.//*
Jonathan S. Cooper
Florida Bar Number: 99376
jcooper@shiplawusa.com
Blanck & Cooper, PA
5730 SW 74th St. Ste. 700
Miami, FL 33143
Telephone: (305) 663-0177
Facsimile: (305) 663-0146

Local Counsel for Plaintiff
OMEGRA CORP SHIPPING PTE LTD.

**Timothy McGovern**
tim.mcgovern@zeilerfloydzad.com
Zeiler Floyd Zadkovich (US) LLP
500 West Madison Street, 10th floor
Chicago, Illinois 60661, USA
Telephone: (708) 320-0010

**Zachary Barger**
zach.barger@zeilerfloydzad.com
Zeiler Floyd Zadkovich (US) LLP
500 West Madison Street, 10th floor
Chicago, Illinois 60661, USA
Telephone: (708) 320-0010
Of Counsel for Plaintiff

8041/ResponseToMtnToDismiss