**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| OMEGRA SHIPPING PTE LTD OF SINGAPORE, | Civil Action No. 2022-cv-20531 |
| Plaintiff, | |
| v. | |
| WORLD FUEL SERVICE (Singapore) PTE LTD, | |
| Defendant. | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

**PRELIMINARY STATEMENT** ................................................................................................1

**ARGUMENT** ..........................................................................................................................2

**I.      COUNT I FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT** .............2

   A.   WFS Did Not <u>Breach</u> The Marine Fuel Contract ........................................................2

        1.   Only The Supplier Sample Determines The Tendered Fuel Quality .........................3

        2.   Omegra Failed To Allege A Fraud Or Manifest Error....................................4

   B.   Omegra Fails To Allege Recoverable <u>Damages</u>................................................5

**II.     COUNT II FAILS TO STATE A CLAIM FOR NEGLIGENCE** ...............................6

   A.   Maritime Economic-Loss Rules Bar Omegra's Negligence Claim................................6

        1.   Count II Is Barred Under The *Robins Dry Dock* Rule................................6

        2.   Count II Is Barred Under The *East River* Rule.........................................6

   B.   The Marine Fuel Contract Precludes Recovery Of The Sought Damages ....................7

**III.    COUNTS III AND IV FAIL TO STATE CLAIMS FOR FRAUD AND GROSS
         NEGLIGENCE** ......................................................................................................8

**IV.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE**.....................10

**CONCLUSION** ....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................2, 8

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................2

*Conley v. Gibson*,
    355 U.S. 41 (1957).....................................................................................................2

*Curacao Oil N.V. v. Trafigura Pte.*,
    2020 WL 3494685 (N.Y. Sup. Ct. Feb. 3, 2020)......................................................3

*Dan-Bunkering v. Tecnologias Relacionadas*,
    17 Civ. 9873 (KPF), 2019 WL 1877344 (S.D.N.Y. Apr. 26, 2019).........................3

*Duferco v. Tube City IMS*,
    No. 10 CIV. 7377 JSR, 2011 WL 666365 (S.D.N.Y. Feb. 4, 2011).........................5

*East River S.S. v. Transmerica Delaval*,
    476 U.S. 858 (1986).............................................................................................1, 6, 7

*Great Fla. Bank v. Countrywide Home Loans*,
    No. 10-22124-CIV, 2011 WL 382588 (S.D. Fla. Feb. 3, 2011)................................9

*H.J. v. Northwestern Bell*,
    492 U.S. 229 (1989)...................................................................................................2

*Heinen v. Royal Caribbean Cruises*,
    806 F. App'x 847 (11th Cir. 2020) ...........................................................................6

*L.S. ex rel. Hernandez v. Peterson*,
    982 F.3d 1323 (11th Cir. 2020) ...............................................................................10

*ING Bank v. Temara*,
    No. CV JKB-15-1488, 2016 WL 67254 (D. Md. Jan. 5, 2016)................................3

*Korea Line v. World Fuel Services*,
    14-cv-20122 (S.D. Fla.), ECF No. 41 (June 30, 2015)..............................................6

*Liberty Highrise v. Praxis Energy Agents*,
    531 F. Supp. 3d 854 (S.D.N.Y. 2021) (enforcing New York forum-selection
    clause) .........................................................................................................................3

*Magnum Constr. v. WSP*,
   522 F. Supp. 3d 1202 (S.D. Fla. 2021) ......................................................................8

*Newbauer v. Carnival*,
   26 F.4th 931 (11th Cir. 2022) .............................................................................2, 5

*R/V Beacon, LLC v. Underwater Archeology & Exlp.*,
   No. 14-cv-22131, 2014 WL 4930645 (S.D. Fla. Oct. 1, 2014) ...................................7

*Rana Fin. v. City Nat'l Bank of New Jersey*,
   347 F. Supp. 3d 1147 (S.D. Fla. 2018) ......................................................................8

*Robins Dry Dock. Trans-Tec Int'l v. TKK Shipping (PTE)*,
   1:18-cv-23199-KMW (S.D. Fla.), ECF No. 81 (Nov. 25, 2020)......................1, 6, 7

*Scott v. Experian Info.*,
   2018 WL 3360754 (S.D. Fla. June 29, 2018) .............................................................8

*Sinaltrainal v. Coca-Cola*,
   578 F.3d 1252 (11th Cir. 2009) .................................................................................8

*Tormenia v. LVNV Funding*,
   No. 8:18-CV-2347, 2019 WL 3429591 (M.D. Fla. July 30, 2019) ............................8

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .........................................................................1

Local Rule 7.1(c)(1).........................................................................................................1

Federal Rule of Civil Procedure Rule 9(b) ...............................................................1, 8, 9

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1(c)(1), WFS respectfully submits this reply memorandum in response to Omega's opposition, ECF No. 20 ("Opp." or "Opposition"), and in further support of its motion to dismiss, ECF No. 16 ("Motion").

## PRELIMINARY STATEMENT

Count I (Breach of Contract) should be dismissed for two reasons.  Under Omega's allegations, (1) WFS did not **breach** any obligation per the contract's fuel-quality dispute resolution procedure, and (2) Omega did not incur any recoverable **damages** per the contract's limitation-of-liability provision.  The parties agree that Count I could have potentially been viable if Omega adequately alleged fraud and gross negligence.  But, as discussed below, it did not.

Count II (Negligence) should be dismissed for three separate reasons.  As an initial matter, Omega states in opposition that Count II is pled only in the event that WFS successfully disputes the validity of the parties' contract.  Because WFS does not, and will not, dispute the contract's validity, Count II should be dismissed.  In any event, under Omega's own allegations and arguments, the claim (1) is barred under ***Robins Dry Dock*** as Omega concedes there was no physical injury to its property, (2) is barred under ***East River*** as it is essentially a breach of contract claim masquerading as a tort claim and, if the parties' contract is in fact invalid (as Omega contends), then there is no duty alleged that WFS could have breached, and (3) lacks any recoverable **damages** per the contract's limitation-of-liability provision.

Counts III (Fraud) and IV (Gross Negligence)—which rely on the same allegations of fraud—should be dismissed for four reasons.  First, in asserting several material elements on "information and belief" with no allegations regarding the underlying "information," Omega fails to satisfy **ordinary pleading standards**.  Second, Omega fails to satisfy Rule 9(b)'s **heightened pleading standards** by failing to specifically allege the circumstances of WFS's purported fraud. In fact, Omega now concedes that WFS did not make a "false statement," all but admitting that this claim should be dismissed.  Third, the asserted fraud occurred *after* Omega incurred the alleged damages such that the fraud could not have **caused** the damages.  Finally, Omega fails to allege that WFS **knew** that the delivered fuel was off specification *at the time of delivery*.

Anticipating dismissal, Omega requests leave to amend (a second time) Counts III and IV to allege more facts regarding the purported fraud.  But, in opposition, Omega admits that it does not know the missing material allegations.  An amendment would thus be **futile**.

## ARGUMENT

In discussing the motion-to-dismiss standard, Omegra misrepresents controlling law. To be sure, Omegra does quote *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). Opp. at 4. But Omegra then discusses opinions that not only predate *Iqbal*/*Twombly*, but are also directly at odds with their holdings. For example, Omegra argues that a motion to dismiss should not be granted "unless the moving party shows '***beyond doubt*** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 4–5 (quoting *H.J. v. Northwestern Bell*, 492 U.S. 229, 249–50 (1989)).[1] The Court in *Twombly* unequivocally abrogated that old motion-to-dismiss standard, expressly holding that the "phrase is best forgotten[.]" 550 U.S. at 560–63 & n.8.

The Eleventh Circuit's recent formulation of the *Iqbal*/*Twombly* standard is discussed in WFS's Motion. *See* Motion at 5–6 (quoting *Newbauer v. Carnival*, 26 F.4th 931, 934–35 (11th Cir. 2022) (quoting *Iqbal*)). A claim is not facially plausible such that it should be dismissed where the "plaintiff's factual allegations" are at best "merely consistent with" the defendant's liability such that liability is "no more than a sheer possibility." *Newbauer*, 26 F.4th at 934–35.

## I. Count I Fails To State A Claim For Breach Of Contract

### A. WFS Did Not <u>Breach</u> The Marine Fuel Contract

Omegra claims that WFS breached the parties' contract by supplying off-specification fuel. Despite Omegra's inflammatory rhetoric, the parties agree that this dispute turns on Clause 6(b) of the contract's WFS Terms. Motion at 6–8; Opp. at 5–8. The parties also agree that, under that clause, the test results of the Supplier Sample (the sample in Sentek's possession) was "conclusive and binding" on the parties. *See* Am. Compl, Ex. C ¶ 6(b). And Omegra alleges that the test results from this Supplier Sample "revealed that the Bunkers were on-specification[.]" Am. Compl. ¶ 15. Under Omegra's own allegations, then, WFS did not breach the contract.

Omegra resists this result by (1) engaging in a strained contract interpretation, and (2) relying on Clause 6(b)'s fraud and manifest error exceptions. Omegra's positions are flawed.

---

[1]    Omegra purports to quote *Northwestern Bell*, but this phrase does not appear in that opinion. Rather, Omegra quotes *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), for the motion-to-dismiss standard that the Supreme Court expressly abrogated in *Twombly*.

### 1.   Only The Supplier Sample Determines The Tendered Fuel Quality

Omegra cannot rely on the other fuel samples' test results to establish a breach.  *See* Opp. at 6.  Omegra's interpretation to the contrary is wrong.

First, Clause 6 initially describes the universe of fuel samples that "conclusively represent" the tendered fuel's quality: those that Sentek (*i.e.*, the Physical Supplier) collected at delivery.  *See* Am. Compl., Ex. C ¶ 6(a) & (b).  That is, Clause 6(b) initially provides that the parties could only assess the fuel's quality with the samples that Sentek collected at delivery.  Test results from any other sample would be completely irrelevant and not trigger the following dispute resolution mechanism.  Second, as Clause 6 contemplates, Sentek retained certain of its collected samples (the "Supplier Sample") and gave the others to Owners.  *See* Am. Compl., Ex. D.  Finally, Clause 6(b) then describes the process by which the parties are to resolve disputes that arose from conflicting test results.  If the fuel samples that Sentek gave to Owners (and, in light of the provision discussed above, only those samples) reflected that the tendered fuel might be off specification, the parties must test the Supplier Sample, and *that* test result "conclusively" determines the quality of the tendered fuel.  *See* Am. Compl., Ex. C ¶ 6(b).

Omegra's reading of Clause 6(b)—that all fuel samples can be used to determine the tendered fuel quality in the event of a dispute—destroys the finality of this dispute resolution mechanism.  Indeed, under Omegra's construction, Clause 6(b) would *never* serve to resolve a dispute.  Omegra's interpretation should thus be rejected.  *See, e.g.*, *Curacao Oil N.V. v. Trafigura Pte.*, 2020 WL 3494685, at *2, *5–7 (N.Y. Sup. Ct. Feb. 3, 2020) (applying WFS's instant interpretation of a similar marine fuel dispute resolution provision, rejecting plaintiff's strained contract interpretation to the contrary as an attempt to rewrite the contract's clear terms).[2]

---

[2]   Bunker supply contracts containing a U.S. choice of venue clause frequently provide that disputes must be resolved in New York, which is why the bulk of U.S. law opinions addressing the specific subject matter of the instant dispute are from New York.  *See ING Bank v. Temara*, No. CV JKB-15-1488, 2016 WL 67254, at *2 (D. Md. Jan. 5, 2016) (transferring bunker contract action to New York in light of the contract's forum-selection clause and because New York is where the bulk of "similar cases involving bunker contractors, physical bunker suppliers, and vessels" are litigated, noting that "[h]aving the question decided consistently is highly desirable"); *see also, e.g.*, *Liberty Highrise v. Praxis Energy Agents*, 531 F. Supp. 3d 854, 862–63 (S.D.N.Y. 2021) (enforcing New York forum-selection clause); *Dan-Bunkering v. Tecnologias Relacionadas*, 17 Civ. 9873 (KPF), 2019 WL 1877344, at *5–7 (S.D.N.Y. Apr. 26, 2019) (same).

Further, contrary to Omegra's suggestion (*see* Opp. at 6–7), there are important industry reasons for collecting multiple fuel samples and only relying on one to resolve a quality dispute. The following is not material to WFS's Motion, but it is helpful background regarding the context of Clause 6(b).  First, under Annex VI of the International Convention for the Prevention of Pollution from Ships ("MARPOL"), one sample of fuel must be provided by the supplier and retained on board the receiving vessel for a minimum of 12 months, and it must be kept sealed and made available upon request to local regulators to verify MARPOL compliance.  Second, multiple samples are taken at delivery and given to the vessel because it is industry practice for ship operators to subscribe to a fuel quality testing program to test the fuel's quality before use (as Owners did here).  It is only when those initial tests results indicate potentially off-specification fuel that a supplier's sample is tested (again, as Owners did here), the results of which are, as discussed above, conclusive regarding the tendered fuel quality.

Simply put, Omegra seeks to circumvent the careful sampling/testing dispute resolution mechanism the parties agreed to under Clause 6(b).  Without factual support, Omegra argues that, because the term "samples" is written in the plural throughout Clause 6(b), *any* sample can be considered, and none are "conclusive and binding."  *See* Opp. at 6–7.  But this argument is belied by the plain language of Clause 6(b), which contemplates that several "samples shall be drawn at the time of delivery," but only those samples retained by the Seller (WFS) or its Physical Supplier (Sentek) "shall be conclusive and binding" in the event of a dispute concerning the fuel quality.

### 2.    Omegra Failed To Allege A Fraud Or Manifest Error

As expected, Omegra alternatively argues that the "conclusive and binding" effect of Clause 6(b)'s dispute resolution procedure does not apply in the case of fraud or manifest error. In this connection, and contrary to Omegra's argument, *see* Opp. at 7–8, its contract claim *is* dependent on its fraud claim.  If Omegra fails to adequately allege that WFS committed fraud, then there is no basis for it to rely on the fraud exception to Clause 6(b).Accordingly, because Count III (Fraud) should be dismissed (discussed below), Count I should also be dismissed.

Omegra does not adequately allege fraud or manifest error.  First, Omegra fails to allege a "fraud" for the reasons discussed below. *See supra* § III. Second, contrary to Omegra's suggestion in its Opposition, it pled *no* facts supporting a claim of "manifest error."[3]  Finally, were this Court

---

[3]    Indeed, the phrase "manifest error"—or even the just the word "error"—does not appear at all in Omegra's Amended Complaint.

to accept Omegra's contention that fraud and manifest error might be inferred from mere conflicting test results associated with non-determinative samples (*see* Opp. at 7), that holding would undermine the entire purpose of Clause 6(b). Clause 6(b) is directed at resolving disputes that arise specifically when test results conflict. If the fraud and manifest error exceptions to this process could be established by the mere fact of conflicting test results, then the exception would swallow the rule. *See Duferco v. Tube City IMS*, No. 10 CIV. 7377 JSR, 2011 WL 666365, at *3 (S.D.N.Y. Feb. 4, 2011) (holding "fraud or manifest error" exception to the parties' agreed upon "final and binding" maritime dispute resolution process could not be established by mere conflicting test results). Likewise, these are precisely the sort of allegations that are "merely consistent with" fraud and manifest error such that fraud and manifest error is "no more than a sheer possibility" and, thus, not plausible. *Newbauer*, 26 F.4th at 934–35.

B. **Omegra Fails To Allege Recoverable <u>Damages</u>**

The parties agree that, under the Marine Fuel Contract, Omegra may not recover "indirect, special, incidental, exemplary, punitive or consequential damages[,]" as well as, among other things, costs arising out of vessel delays, lost profits, and loss caused by business interruption. *See* Am. Comp., Ex. C ¶ 6(g). Omegra, however, only alleges that it incurred those types of expressly excluded damages: (1) Omegra being unable to charter the Vessel to third parties, (2) costs associated with removing the fuel from the Vessel, and (3) costs associated with testing various fuel samples. Am. Compl. ¶¶ 22, 24. Because Omegra fails to allege that it incurred recoverable damages, WFS cannot be held liable for breach of contract.

Omegra does not address or oppose WFS's position in this respect. Instead, Omegra asserts that it may recover direct, compensatory damages. *See* Opp. at 8–10. But Omegra does not allege that it incurred any such damages, it only alleges that it incurred the expressly excluded damages.

Finally, the parties agree that the only way Omegra could recover these excluded damages is if it establishes that WFS was grossly negligent. *See* Opp. at 9.[4] Because Count IV (Gross Negligence) should be dismissed (discussed below), Count I should also be dismissed.

---

[4]    Omegra engages in an unnecessary and lengthy attempt to distinguish several cases cited in WFS's Motion. *See* Opp. at 9–10. But WFS relied on those opinions simply for the proposition that courts enforce the kind of limitation-of-liability provision at issue here. *See* Motion at 9; *see, e.g.*, *Korea Line v. World Fuel Services*, 14-cv-20122 (S.D. Fla.), ECF No. 41 (June 30, 2015) at 4–10 (enforcing a similar exculpatory, limitation-of-liability clause, finding the clause was clear and unequivocal) (citing *Diesel v. Islander Invs.*, 271 F.3d 1318, 1324 (11th Cir. 2001)). Omegra

## II.     Count II Fails To State A Claim For Negligence

Count II for Negligence should be dismissed because it "was pled in the alternative in case the factfinder determined that there was not a valid and enforceable contract between the Parties." Opp. at 3.  Because the existence of a valid and enforceable contract is not in dispute, Count II should be dismissed.  WFS provides its arguments for dismissal because they underscore why the contract terms should be enforced and reliance on samples outside the contract should be rejected.

### A.     Maritime Economic-Loss Rules Bar Omegra's Negligence Claim

Omegra conflates the economic loss rule identified in *Robins Dry Dock* with the economic loss rule identified in *East River*.  *See* Opp. at 11–12.  They are two materially distinct doctrines. Indeed, WFS relied on a series of recent opinions from the Eleventh Circuit and this District reflecting how these two rules are applied.  Omegra ignored all of them.

#### 1.     Count II Is Barred Under The *Robins Dry Dock* Rule

Under *Robins Dry Dock*, an unintentional maritime tort claim seeking recovery of economic losses must be dismissed where the plaintiff fails to allege "[1] physical injury to [2] their person or their property[.]"  *Heinen v. Royal Caribbean Cruises*, 806 F. App'x 847, 850 (11th Cir. 2020) (affirming dismissal under *Robins Dry Dock* rule).  Here, Omegra seeks recovery of only economic losses, and it fails to allege a physical injury to, and a property interest in, the at-issue Vessel.  In fact, Omegra admits that the Vessel never used the allegedly off-specification fuel, and that Owners (not Omegra) own the Vessel.  *See* Am. Compl.  ¶¶ 6–7, 22.  Count II is accordingly barred under *Robins Dry Dock.  See* Motion at 10–11 (collecting cases).

Omegra does not oppose any of this.  Instead, Omegra argues that it did not allege any physical injury to Omegra's property.  *See* Opp. at 11.  Omegra thus all but admits its negligence claim is barred under *Robins Dry Dock.  Trans-Tec Int'l v. TKK Shipping (PTE)*, 1:18-cv-23199-KMW (S.D. Fla.) ("*Trans-Tec* Action"), ECF No. 81 (Nov. 25, 2020) at 4–8 (dismissing time charter's negligence claim for allegedly off-specification fuel under *Robins Dry Dock*).

#### 2.     Count II Is Barred Under The *East River* Rule

Under *East River*, a tort claim should be dismissed where the alleged breach of duty and damages are materially the same as that alleged in a breach of contract claim.  *See R/V Beacon, LLC v. Underwater Archeology & Exlp.*, No. 14-cv-22131, 2014 WL 4930645, at *5 (S.D. Fla.

---

does not dispute that, absent gross negligence, the Marine Fuel Contract's limitation-of-liability provision is enforceable.  There is thus no dispute for the Court to resolve regarding those cases.

Oct. 1, 2014) (dismissing under *East River*).  Without such a rule, "contract law would drown in a sea of tort." *East River S.S. v. Transmerica Delaval*, 476 U.S. 858, 866 (1986) (citation omitted). Here, Omegra's negligence claim is based on the same breach of duty and damages as in its breach of contract claim such that there is no material difference between the two causes of action.  Count II is thus barred under *East River* and should be dismissed **with prejudice**.  *See* Motion at 11–12.

Again, Omegra does not dispute any of this.  Nor could it.  *See Trans-Tec* Action, ECF No. 49 (Jul. 29, 2019) at 5–9 & n.2 (dismissing negligence claim for allegedly off-specification fuel as barred under *East River*).  Rather, Omegra attempts to avoid the parties' contract, arguing that its negligence claim assumes there is no contract.  *See* Opp. at 10–11.  First, WFS does not contest that the parties' Marine Fuel Contract is valid and binding.  Second, the only duty that Omegra claims that WFS breached is the duty that arises out of the parties' contract.  *See* Am. Compl. ¶¶ 36–37.  So if that contract is invalid (as Omegra now contends), then, under Omegra's own position, its negligence claim fails.  Finally, even if Omegra did allege some other non-contract based duty (it didn't), and regardless of whether the parties' contract is enforceable (it is), Omegra's negligence claim is still barred under *Robins Dry Dock*, discussed above.

### B.  The Marine Fuel Contract Precludes Recovery Of The Sought Damages

Omegra also fails to allege facts plausibly supporting recoverable damages with respect to its negligence claim.  Omegra seeks the same exact economic-loss damages in its negligence claim as it does in its contract claim, which, as discussed above, are barred by the parties' contract.  Am. Compl. ¶¶ 22, 24, 26–40; *id.*, Ex. C ¶ 6(g).  Omegra's negligence claim should thus be dismissed.

Omegra attempts to resist this result, arguing that (1) Omegra's negligence claim assumes there is no contract, and (2) WFS's alleged gross negligence precludes the limitation-of-liability provision.  *See* Opp. at 12.  Omegra's former position fails for the reasons discussed above, and its latter position fails for the same reason that Count IV (Gross Negligence) fails, discussed below.

### III.   Counts III and IV Fail To State Claims For Fraud And Gross Negligence

Omegra fails to allege fraud and gross negligence.  As an initial matter, Omegra does not dispute that its gross negligence claim depends on its fraud allegations such that both Counts are subject to Rule 9(b)'s heightened pleading standard.  *Compare* Motion at 14, *with* Opp. at 12–16.[5]

First, Omegra's fraud allegations fail to satisfy ordinary pleadings standards.  Omegra asserts its fraud claim on "information and belief," but it fails to allege the purported factual "information" that reasonably supports each "belief."  *See* Am. Compl. ¶¶ 44, 45.  In interpreting *Iqbal*/*Twombly*, the Eleventh Circuit and this District have held that such "information and belief" pleading—including when alleging fraud—is conclusory and insufficient to satisfy **ordinary pleading standards**, let alone Rule 9(b).  *See Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1268 (11th Cir. 2009) (dismissing conspiracy claim where material allegations were conclusory, based only on "information and belief," citing *Iqbal*); *Magnum Constr. v. WSP*, 522 F. Supp. 3d 1202, 1209 (S.D. Fla. 2021) (same, dismissing fraud claim); *Scott v. Experian Info.*, 2018 WL 3360754, at *6–7 (S.D. Fla. June 29, 2018) (same, collecting cases on "information and belief" pleading).

Omegra opposes this pleading rule by citing a slew of out-of-circuit, pre-*Iqbal*/*Twombly* opinions and, for whatever reason, framing those opinions as if they are at odds with the Eleventh Circuit and this District.  *See* Opp. at 13.  Omegra further argues that it would be unfair to require it to allege facts that it does not know and that are in WFS's possession—including facts regarding WFS's fraudulent knowledge and intent—a result that it claims would "defeat[] the purpose of the discovery process[.]"  *See id.* at 13–14.  But those positions are precisely what the Supreme Court addressed and rejected in *Iqbal*/*Twombly*.  *See, e.g.*, *Iqbal*, 556 U.S. at 686–87 (holding plaintiffs must allege sufficient underlying factual information plausibly supporting inference of defendant's discriminatory intent).  "[D]iscovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it."  *Tormenia v. LVNV Funding*, No. 8:18-CV-2347, 2019 WL 3429591, at *5 (M.D. Fla. July 30, 2019) (collecting cases, dismissing claims with prejudice where material allegations were pled on "information and belief" with no allegations regarding the underlying "information").

---

[5]   Omegra engages in an unnecessary and lengthy attempt to distinguish *Rana Fin. v. City Nat'l Bank of New Jersey*, 347 F. Supp. 3d 1147 (S.D. Fla. 2018).  *See* Opp. at 15.  WFS only relied on *Rana* for the proposition that Rule 9(b) applies to both the fraud and gross negligence claims.  *See* Motion at 14–15.  Because Omegra does not oppose that conclusion, there is no dispute over *Rana* that needs to be resolved.

In any event, courts that have adopted a softened ***Rule 9(b) standard*** in such a situation (including the out-of-circuit opinions cited by Omegra) still apply ***ordinary pleading standards***, which require a plaintiff to allege sufficient underlying "information" to support each "belief." *See, e.g.*, *Great Fla. Bank v. Countrywide Home Loans*, No. 10-22124-CIV, 2011 WL 382588, at *5–6 (S.D. Fla. Feb. 3, 2011) (dismissing fraud claim, noting courts may relax Rule 9(b) for facts "peculiarly within the defendants' knowledge[,]" but finding various material allegations were insufficiently pled on "information and belief"—including regarding fraudulent knowledge and intent—because, even there, plaintiffs still must allege sufficient underlying factual "information" reasonably supporting each "belief"). Put differently, in arguing that Omegra need not allege facts that it does not know, Omegra concedes that its claimed fraud is sheer speculation.

Second, Omegra's fraud allegations fail to satisfy Rule 9(b)'s heightened pleading requirements. Although Omegra *does* allege the who, what, when, where, and how of Sentek providing the Supplier Sample for testing, *see* Opp. at 14–15, Omegra does *not* allege the who, what, when, where, and how of WFS's **fraud**. That is, Omegra does not specifically allege the circumstances regarding WFS's purportedly fraudulent statements. Omegra attempts to avoid Rule 9(b) by reframing its fraud claim, asserting that the alleged fraud is not based on "fraudulent statements" but, rather, on the mere "conduct of supplying" a sample that contained fuel from a different source (an assertion that is also conclusory). *See* Opp. at 15–16.[6] But even Omegra recognizes that one of the fundamental elements of fraud under Florida law is that the defendant actually made a false "statement" to the plaintiff. *See id.* at 13–14 (noting elements of fraud). Omegra thus all but admits that it fails to state a claim for fraud.

Third, even if Omegra had adequately alleged a fraud, its own allegations reflect that the "conduct of supplying" the purportedly false fuel sample did not cause Omegra's sought damages. Regardless of whether the Supplier Sample contained fuel from a different source, regardless of whether WFS knew that, and regardless of whether WFS intended to mislead Omegra in this respect, Omegra would have incurred all of the sought damages, which arose out of Owners' decision not to consume the fuel. Indeed, as alleged, Sentek provided the Supplier Sample for

---

[6] Notably, while Omegra attempts to reframe its scant and un-particularized fraud allegations, Omegra could not in its Opposition even state with particularity who actually committed the alleged fraud. *See* Opp. at 14 ("Who: Defendant or its physical supplier"). That is, Omegra cannot even argue that WFS committed the purported fraud.

testing (*i.e.*, the purportedly "fraudulent" "conduct") *well after* delivering the fuel, *well after* Owners already decided not to consume the fuel, and *well after* Omegra put WFS on notice of off-specification fuel.  *See* Am. Compl. ¶¶ 14, 15, 19, 22, 45.

Finally, Omegra fails to allege facts supporting its gross negligence claim's heightened reckless, conscious breach requirement.  Even if all of the above-discussed allegations could support a fraud, none of these facts reflect that, ***at the time of delivery***, WFS knew that the fuel was off specification.  Nor does Omegra allege what WFS could have done but failed to do to obtain that knowledge.  Omegra's unnecessary, lengthy attempt to distinguish WFS's cited cases notwithstanding, *see* Opp. at 16, Omegra does not oppose any of this.

## IV.     The Complaint Should Be Dismissed With Prejudice

Omegra requests leave of court only to amend Counts III (Fraud) and IV (Gross Negligence) so that it can allege further facts regarding fraud.  *See* Opp. at 17.  That request should be denied.  As an initial matter, Omegra does not request leave to amend Counts I (Breach of Contract) or II (Negligence).  Those Counts may thus be dismissed with prejudice.  Indeed, under the circumstances of this case, Counts I and II are at best duplicative of Counts III and IV because, to establish Counts I and II, Omegra will need to establish Counts III and IV, and Counts I and II offer no relief that Counts III and IV do not as well.  And WFS already argued that Count II should be dismissed with prejudice, *see* Motion at 12, which Omegra did not address, let alone oppose, *see generally* Opp.  In any event, regarding Counts III and IV, although leave is generally freely given, here, Omegra has already admitted that it does not know any of the missing material facts. *See* Opp. at 14.  A second amendment would thus be futile.  *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020) (affirming denial of second amendment for futility where plaintiffs failed to allege the defendant's unlawful knowledge/purpose and failed to explain how they could otherwise allege a plausible claim).

## CONCLUSION

For these reasons, the Amended Complaint should be dismissed in full **with prejudice**.

Dated: Miami, Florida
         June 3, 2022

                              HOLLAND & KNIGHT LLP

                              By: /s/ Adolfo E. Jimenez
                              Adolfo E. Jimenez, FL Bar No. 869295

701 Brickell Avenue, Suite 3300
Miami, Florida  33131
Telephone: (305) 789-7720
Adolfo.Jimenez@hklaw.com
Robert Denig (admitted pro hac vice)
31 W. 52nd St. 12th Fl.
New York, NY  10019
Telephone: (212) 513-3200
Robert.Denig@hklaw.com

Attorneys for Defendant
World Fuel Services (Singapore) PTE LTD