UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 2022-cv-20531-JAL

**OMEGRA SHIPPING PTE**
**LTD. OF SINGAPORE,**

        Plaintiff,

v.

**WORLD FUEL SERVICES**
**(SINGAPORE) PTE LTD.,**

        Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR RECONSIDERATION AND,**
**ALTERNATIVELY, CERTIFICATION FOR INTERLOCUTORY**
**APPEAL (D.E. 47) AND SUPPORTING MEMORANDUM OF LAW**

NOW COMES Plaintiff, Omegra Shipping Pte Ltd. of Singapore ("Omegra" or "Plaintiff"), by and through its undersigned counsel, and files its Response in Opposition to Defendant World Fuel Services (Singapore) Pte Ltd.'s ("Defendant" or "WFS") Motion for Reconsideration and, Alternatively, Certification for Interlocutory Appeal ("Current Motion"). For the reasons stated in the Memorandum that follows, the Current Motion should be denied in its entirety.

**PRELIMINARY STATEMENT**

As the Court knows, this is an action for breach of contract (among other claims) related to Omegra's purchase of bunker fuel from Defendant for a vessel chartered by Omegra. Defendant moved to dismiss Omegra's Amended Complaint. This Court then issued a 29-page opinion after carefully scrutinizing all of the arguments Defendant presented in support of its motion to dismiss.

1

(D.E. 43.) Nearly two months later, Defendant filed the Current Motion which seeks reconsideration of the Court's decision, attempting to spin the result, without any supporting evidence, by suggesting that the market should shield it from its own conduct. Defendant further fails to explain why it failed to argue some unknown market impact during the briefing of its own motion to dismiss. If this issue was truly as important as Defendant claims, surely it would have dedicated at least a paragraph to the issue in the *twenty-seven pages* of argument it presented to the Court in support of its motion to dismiss. (See D.E. 16 and 21.)

Going yet a step further, Defendant also seeks alternative relief in an untimely motion for certification of a question for interlocutory appeal. Yet the question it would have certified, even if presented timely, does nothing to advance the ultimate termination of the litigation, and, in any event, is founded upon a mischaracterization of this Court's decision.

If the issues presented in the motion to dismiss phase of the matter were so critical, as now suggested by Defendant, then Defendant could have and should have presented evidence and argument to support its extreme claims, either in the Current Motion or in previous filings with the Court. However, as the record stands, this is nothing more than a tactic to avoid discovery and delay the matter from proceeding. Regardless, Defendant failed to meet the requirements under Fed. R. Civ. P. 60(b)(1) or 60(b)(6), or those seeking certification of a controlling question of law for interlocutory appeal under 28 U.S.C. § 1292(b), to justify its requested relief. The Current Motion should be denied in its entirety.

**PROCEDURAL BACKGROUND**

Omegra initiated this action on February 22, 2022, necessitated in part by a provision in the WFS terms and conditions that required suit to be brought within six-months. (D.E. 1 and D.E. 4-3, ¶ 6(e).) Omegra filed its Amended Complaint on March 1, 2022 ("Complaint"). (D.E. 4.)

Omegra properly served Defendant on March 23, 2022. (D.E. 9.) Counsel for Defendant requested additional time to respond to the Complaint to May 13, 2022, and Omegra did not object. (D.E. 10.) Therefore, Defendant had nearly two months to file a response to the Complaint.

On May 13, 2022, Defendant filed a 17-page motion to dismiss the Complaint. (D.E. 16.) On May 27, 2022, Omegra filed its opposition to the motion. (D.E. 20.) On June 3, 2022, Defendant filed a 10-page reply brief. (D.E. 21.)

On August 17, 2022, the Court issued its Order granting in part, and denying in part, Defendant's motion to dismiss. (D.E. 43.) The Court provided detailed analysis of each of Defendant's arguments in reaching its decision. The Court granted the motion to dismiss, with prejudice, as to Count II (negligence) of the Complaint. The Court granted the motion to dismiss, without prejudice, as to Count IV (gross negligence) of the Complaint. The Court denied the motion to dismiss as to Counts I (breach of contract) and III (fraud) of the Complaint, finding that the Complaint plausibly alleged facts that satisfied each of the elements of these claims. (D.E. 43 at 11-12, 26.)

On October 5, 2022, Defendant filed the Current Motion that seeks reconsideration of the Court's decision on August 17, 2022, or, alternatively, leave to file an interlocutory appeal for a specific question: "May fraud be inferred simply from a conflict in bunker sample test results?" (D.E. 47 at 20), suggesting that the fraud claim is based "simply" on competing bunker samples. Further, in the Current Motion, Defendant argues for the first time that somehow allowing a fraud count to proceed would cause injustice to the entire maritime, bulk oil, and commodities industries. Defendant provides no market evidence to support such a sweeping generalization.

## I.  SUMMARY OF THE FACTS

Defendant, through the Bunker Sale Confirmation email (Am. Compl. (D.E. 4) *Exh. B* "Bunker Sale Confirmation") and "WFS Marine Group Companies General Terms and

3

Conditions" (Am. Compl. (D.E. 4) *Exh. C* "WFS Terms") entered into a contract with Omegra on September 10, 2021, whereby Defendant agreed to provide marine fuel of a particular specification (the "Bunkers") to a vessel that Omegra chartered. Defendant or its agent loaded the Bunkers onto the vessel approximately two weeks later. (*See* Am. Compl. (D.E. 4) ¶¶10, 12.) Defendant provided the Bunkers to Omegra through Defendant's physical supplier and agent, Sentek.

Days after delivery of the Bunkers, the owner of the vessel, White Lilac Shipping S.A. ("Owners"), notified Omegra that its sample showed that the Bunkers were off specification. (Id. ¶¶14-17.) Additional samples were subject to testing by the various parties. The only sample that was on-specification was the "Supplier Sample "(id. ¶15) which just so happens to be the sample that Defendant says should be the one and only sample that matters. (*See, e.g.,* D.E. 47 at 5 ("The binding sample retained by Sentek (the 'Supplier Sample'" revealed that the fuel conformed… The other non-binding samples – samples that were in Owners' possession as well as samples that Owners collected after delivery – did not.").) Every other sample available to be tested showed that the Bunkers were off specification. (Id. ¶¶14, 16, 17.)

With three other samples showing that the Bunkers were off specification, Owners and Omegra came to the reasonable conclusion that the Supplier Sample must have come from a different source than the Bunkers themselves. (Id. at ¶18.) Therefore, the sample relied upon by Defendant and its agent, Sentek, were not from the Bunkers.

Omegra notified Defendant that the Bunkers did not meet the required specifications as necessitated by the terms of the parties' agreement, but Defendant denied Omegra's claim. (Am. Compl. (D.E. 4) at ¶¶19, 21.) As a direct and proximate result of Defendant and its physical supplier loading Omegra's chartered vessel with off-specification marine fuel, Omegra suffered myriad damages, including loss of use of the vessel, costs to de-bunker, costs of alternative sources

of marine fuel, costs to undertake testing of the samples, and, most obviously, loss of use of the marine fuel that it paid for pursuant to the Parties' agreement. (Id. at ¶22.)

In a strained reading of Clause 6(b) of the WFS Terms – Terms which were written by Defendant and incorporated into the sale agreement with Omegra without opportunity for Omegra to negotiate – Defendant argues repeatedly in its motion to dismiss, reply brief, and Current Motion that "the physical supplier's fuel sample test result – and *only* that result – will conclusively determine whether the sold fuel was on- or off-specification." (Current Motion (D.E. 47) at 9.) But when read in its entirety, Clause 6(b) clearly permits the very type of action that Omegra has brought before this Honorable Court:

> With respect to the quality of the Products supplied, samples shall be drawn at the time of delivery by the Seller's representatives. The method of sampling will be governed by local regulation, if such exists, otherwise as per the method used by the local physical supplier. Buyer or its representatives may witness the sampling but the absence of Buyer or its representatives at the time of sampling shall not prejudice the validity of the samples taken. These samples shall conclusively represent the quality of the Products supplied to the Receiving Vessel. In the event of a claim by Buyer basis (sic) an analysis result showing that any agreed specification parameter(s) has exceeded the confidence level(s) according to the relevant sections on precision and interpretation of test results in the ISO 4259 standard, the sample(s) in Seller's or its physical supplier's possession shall be tested for the allegedly off-specification parameters only and analyzed by an independent surveyor, located in the country (and where available, port) of supply, whose results shall be conclusive and binding on both Buyer and Seller, absent fraud or manifest error. The independent surveyor shall be appointed by the Seller, and the surveyor's fee shall be shared equally by Buyer and Seller (provided, however, if such surveyor analysis does not show any deviations from agreed-upon quality, the surveyor's fee shall be for Buyer's account).

In relation to the survey of the Seller's Sample, the phrase, "whose results shall be conclusive and binding on both Buyer and Seller, absent fraud or manifest error," *only applies to this specific sample*. Meaning that, regardless of whether the sample in Seller's or its physical suppliers' possession is found to be on specification, the other samples can be used as evidence to show that the entirety of the delivery was off specification. WFS Terms could just as easily have been written

5

to say, "The Sample in Seller's or its physical supplier's possession shall conclusively represent the quality of the Products supplied to the Receiving Vessel." But they were not. Instead, WFS Terms provide "*[t]hese samples* shall conclusively represent the quality of the Products supplied to the Receiving Vessel."

In any event, this Honorable Court found that Omegra plausibly alleged a fraud, and therefore the samples do not conclusively determine the fuel's quality. (D.E. 43 at 11-12; citing Curacao Oil, 2020 WL 3494685 *5 (N.Y. Sup. Ct. 2020).) The Order explained how the allegations in the Amended Complaint formed a viable claim for fraud: "Plaintiff relied on Defendant's false sample to initially object to the Owners' request to debunker, and such reliance disrupted or delayed operations. When construed in the light most favorable to Plaintiff, these allegations raise the plausible inference that but-for the allegedly false sample provided by Defendant, Plaintiff would have de-bunkered sooner, that the delay and/or disruption in operations would have been shorter, and, therefore, that Plaintiff's losses would have been minimized." (D.E. 43 at 25.) Furthermore, the allegations pled on information and belief were done properly, as "[o]ne could reasonably infer that Defendant knew that the bunkers delivered to the Vessel were off-specification, so Defendant provided a false sample of on-specification fuel to deceive Plaintiff into believing it had purchased on-specification fuel. One could further reasonably infer that Defendant intended Plaintiff to rely on the false sample, and the Amended Complaint plausibly alleges that Plaintiff did rely on this misrepresentation to its detriment by initially objecting to the Owners' request to debunker, which further disrupted and delayed operations." (Id. at 26.)

The Court therefore permitted Omegra's breach of contract and fraud claims to proceed. Unsatisfied with the result and no doubt frightful of what discovery may uncover, and without either a change in the law or new evidence to support its position, Defendant moves the Court to

reconsider its decision or, in the alternative, certify the question of whether fraud may be inferred "simply from a conflict in bunker sample test results" for interlocutory appeal. (Current Motion (D.E. 47) at 20.) For the reasons that follow, both requests should be denied.

## II. LEGAL STANDARD

### A. Motions for Reconsideration

Defendant seeks relief (or reconsideration) under Rule 60(b) of the Federal Rules of Civil Procedure but fails to identify the subsection under which it seeks its relief, or to which its arguments relate. (D.E. 47, Page 11 of 24). Defendant does identify Rules 60(b)(1) and 60(b)(6) generally, but the motion does not provide any information to apprise the Court or Omegra regarding its arguments under these competing sections of Rule 60(b). Rules 60(b)(1) and (b)(6) are "mutually exclusive." *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993). Motions analyzed under Fed. R. Civ. P. 60(b) cannot be general pleas for relief. They must state specific grounds for reversal or modification listed in Fed. R. Civ. P. 60(b). *U.S. v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992).

Fed. R. Civ. P. 60(b)(1) authorizes a court to grant relief from judgments for "mistake, inadvertence, surprise, or excusable neglect." In contrast:

> Relief under Rule 60(b)(6) " 'is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances[,]' " and that "absent such relief, an extreme and unexpected hardship will result." *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) (quoting *Griffin v. Swim–Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)); *Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1294 (11th Cir. 2013) (same). In other words, the movant " 'must demonstrate a justification so compelling that the district court was required to vacate its order.'" *Galbert*, 715 F.3d at 1294 (quoting Cano, 435 F.3d at 1342). However, even under exceptional circumstances, the decision to grant Rule 60(b)(6) relief is a matter for the court's sound discretion. *Id*. at 1294 (citing *Cano*, 435 F.3d at 1342 and *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. Unit A 1981)).

*Rismed Oncology Systems, Inc. v. Baron, et al.*, 638 Fed.Appx. 800, 807 (11th Cir. 2015). "Federal courts grant relief under Rule 60(b)(6) only for extraordinary circumstances." *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1288 (11th Cir. 2000).

"A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F.Supp. 1561, 1563 (S.D. Fla. 1992). "The motion to reconsider would be appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. ***Such problems rarely arise and the motion to reconsider should be equally rare.***" *Id.*, quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) [emphasis added].

"For reasons of policy, courts and litigants cannot be repeatedly called upon to backtrack through the paths of litigation which are often laced with close questions. *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D.Fla.1994). There is a badge of dependability necessary to advance the case to the next stage. *Kuenz v. Goodyear Tire & Rubber Company*, 617 F.Supp. 11, 14 (N.D.Ohio, E.D.1985)." *Cheney v. Cyberguard Corp.*, 2001 WL 1916564 *1 (S.D. Fla. 2001).

### B. Motions for Certification for Interlocutory Appeal

"Appellate review is generally postponed until after the entry of final judgment. Certification is reserved for truly exceptional cases." <u>Drummond Company, Inc. v. Collingsworth</u>, 2021 WL 1056610 *9 (N.D. Ala.); citing <u>Judicial Watch v. Nat'l Energy Policy Dev.</u>, 233

F.Supp.2d 16, 20 (D. D.C. 2002). "A party seeking certification pursuant to § 1292(b) must meet a high standard to overcome the strong congressional policy against piecemeal reviews, and against obstructing or impeding an ongoing judicial proceeding by interlocutory appeals." Id. (internal quotations and citation omitted). Because Section 1292(b) "is a departure from the normal rule that only final judgments are appealable," it "must be construed narrowly" and invoked only in "rare circumstances." Id.; quoting James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1067 n.6 (9th Cir. 2002).

"Under 28 U.S.C. § 1292(b), a district court may, in its discretion, certify an interlocutory order for appeal. Section 1292(b) requires that the district court determine that the order (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. Harris v. Luckey, 918 F.2d 888, 892 (11th Cir.1991)." Fabricant v. Sears Roebuck & Co., 2001 WL 883303 (S.D. Fla. 2001).

There is a "strong presumption against interlocutory appeals." Teblum v. Eckerd Corp. of Fla., Inc., 2006 WL 1151816, at *4 (M.D.Fla. Apr.28, 2006). Even if all three section 1292(b) elements are satisfied, the Court has discretion to deny certification. In re Checking Account Overdraft Litigation, 201 WL 3377592 *2 (S.D. Fla.); citing McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1259 (11th Cir. 2004).

### III.   ARGUMENT

**A. The Court's decision to deny Defendant's motion to dismiss the entirety of Omegra's Amended Complaint should not be reconsidered.**

The Current Motion directs this Court to a series of prior cases in which motions for reconsideration were granted, none of which impact the specific facts of this matter. For example, in Waite v. All Acquisition Corp., 2016 WL 2346768 (S.D. Fla. 2016), the Court found that it had

9

initially misapplied the law in finding that a party was subject to general jurisdiction in Florida, but nonetheless found that the Court still had specific jurisdiction over that party. No such misapplication is apparent here, nor does Defendant argue that the Court misapplied the holding or dicta in one particular case to eschew another.

In Fuller v. Edward B. Stimpson, 971 F. Supp. 2d 1146 (S.D. Fla. 2013), in a post-judgment motion, new evidence was presented to the Court that validly explained and excused behavior that was previously held to be discriminatory, and the Court's previous decision to deny the defendant's motion for summary judgment was thus reconsidered and judgment was entered against the plaintiff. Fuller, 917 F. Supp. 2d at 1177-78. Likewise, in Rogers v. United States, 2016 WL 4805920 (S.D. Fla. 2016), the Court reconsidered its order denying a party's motion for summary judgment because it "failed to apprehend [that party's] argument when it was first presented in its Motion for Summary Judgment." Rogers at *4. The Current Motion is void of any mention that this Court somehow failed to apprehend a portion of its argument; Defendant simply just does not like the result.

It is imperative to note at this juncture that the Order which Defendant seeks to be reconsidered is not dispositive. Unlike Fuller and Rogers above, the matter *sub judice* is in the earliest stage of its litigation. Following the Court's Order, Omegra still bears the burden of proving each element of each of its remaining claims to a factfinder, and Defendant will be afforded the opportunity to argue that Omegra failed to do so both at the summary judgment stage if it so chooses and at trial. That is, the Court did not rule that Defendant committed fraud or breached the parties' contract; instead, under Fed. R. Civ. P. 12, the Court construed all allegations and inferences in Omegra's favor and determined that plausible claims for both breach of contract and fraud remain.

      i.      **The Order is completely in line with the Parties' Contract.**

Regardless of which party's interpretation of Clause 6(b) is used, this Honorable Court's Order was proper under both. Further, the Court specifically analyzed the contractual issues that WFS is attempting to rehash here. Defendant maintains that Clause 6(b) provides that the sample taken by the physical supplier conclusively determines the quality of the Bunker supplied. (D.E. 43 at 7.) Meanwhile, Omegra asked that the Court read Clause 6(b) in its entirety, with specific reference to the language a few sentences prior – "***[t]hese samples*** shall conclusively represent the quality of the Products supplied to the Receiving Vessel" – to permit all samples taken at the requisite time to be open for analysis and quality-determination. (Id. at 8.) But regardless, both Parties agree that there is a "fraud or manifest error" exception to the extent in which the physical supplier's sample is considered.

The Court already had ample opportunity, and provided detailed analysis, to consider how the events as alleged in the Complaint plausibly set out both a breach of Defendant's contractual obligations and Defendant's fraudulent conduct in trying to conceal the quality of the Bunkers. Other than bald assertions that the language in the parties' contract "embraces a particular dispute resolution mechanism that is ubiquitous to the maritime industry," Defendant offers no compelling argument for how the Court's Opinion and Order is at odds with the parties' contract. Moreover, Defendant simply rehashes prior arguments it has made throughout its filings as to why fraud cannot be inferred from the allegations in the Complaint. Nothing has changed in the law or the facts that should lead the Court to change its mind. Defendant's argument simply does not meet the high standards for relief required by Fed. R. Civ. P. 60(b).

      ii.      **The Order is completely in line with well-established pleading requirements.**

Defendant's reargued demand that this Court dismiss Omegra's claim because it is based "simply from a conflict in test results" has been fully briefed and decided. Of course, plaintiff has

11

not obtained judgment on the issues, but the claim can proceed. The Court's decision was completely in line with established court rules and precedent. Defendant is attempting to end-run around its failed argument to re-argue the issues previously decided. "A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." Z.K. Marine Inc. v. M/V Archigetis, 808 F.Supp. 1561, 1563 (S.D. Fla. 1992). Defendant's attempt to reargue this issue and demand a dismissal of Omegra's fraud claim, founded on withholding information, should be rejected.

As the Court recognized: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (D.E. 43 at 5; quoting Ashcroft v. Iqbal, 556 U.S.662, 678 (2009).) Here, Defendant misconstrues the pleading standards as contained in the Federal Rules of Civil Procedure with the burden of proof at trial.

> **iii.    Defendant misinterprets other courts that have addressed the issue and cites to precedent that is inapplicable to the matter *sub judice*.**

Defendant's strained reading of the New York Supreme Court's holding in Sempra Energy Trading v. BP Prods. N. Am., is inapposite. There, the New York Supreme Court specifically addressed the fact that "[Plaintiff] has not even claimed, nor provided evidence, that [Defendant] has engaged in fraud, only that there is a possibility that [Defendant] *may* have committed fraud." And in its penultimate paragraph: "[Plaintiff] now brings forth allegations and theories of manifest error and fraud *that were not initially brought up in [Plaintiff's] Complaint*." [Emphasis added]. This may obviously be easily distinguished here, as Omegra's Amended Complaint contains a specific claim for Fraud, which the Court found "plausibly alleges a claim for fraud." (D.E. 43 at 26.)

12

Likewise, the Southern District of New York in Duferco, S.A. v. Tube City IMS, LLC, 2011 WL 666365, reached a conclusion much different than what Defendant alleged in its Motion:

> To be certain, gross error is one of several factors which, if ***combined with other indicia of impropriety***, can fairly support an inference of bad faith. But to adopt Duferco's contention that gross error alone is sufficient to impute bad faith, [internal citation omitted], would prove too much, as it would, in effect, dissolve the long-standing distinction between the two concepts in an important area of New York contract law. Gross error entails nothing more than that the results of an inspection are at wide variance with what other, presumably more reliable, evidence shows is the case. Bad faith, by contrast, entails that the inspector engaged in some form of impropriety or affirmative misconduct during the course of his inspection. Accordingly, the Court concludes that the arbitrator correctly ruled that ***evidence of gross error in an inspection is, standing alone, insufficient to establish bad faith or fraud*** on the part of the inspector and therefore properly excluded such evidence in the absence of any other evidence indicating bad faith or fraud.

Duferco, 2011 WL 66365 *5 [emphasis added]. As can be gleaned from the excerpt above, this decision was written following a petition to vacate an arbitration award after a full arbitration proceeding had commenced, including a *six-day* hearing. Id. *2.

If the allegations in the Complaint prove true, Defendant's conduct went well beyond "gross error": Defendant (i) deliberately provided a sampling of marine fuel that came from a source other than what it sold to Omegra in order to deceive Omegra into believing it had purchased on-specification fuel, and (ii) slammed the door on any type of damages claim Omegra has against Defendant by hiding behind a strained interpretation of Claus 6(b) of its Terms. This fraudulent scheme, as plausibly alleged in the Amended Complaint, will be uncovered only through diligent discovery and presentation at trial. Denying Omegra its day in court by misreading and misconstruing the non-precedential New York courts' holdings above would be improper, and the Court should not be persuaded by this rehashed argument.

**B. The Court should not certify Defendant's question for interlocutory appeal.**

    **i.    Defendant's motion was untimely.**

13

Judges in the Southern District of Florida have found motions for certifications of interlocutory appeals untimely in situations quite similar to the one before the Court today. In Fabricant v. Sears Roebuck & Co., 2001 WL 883303 (S.D. Fla. 2001), the Court found as follows:

> In the context of requests for interlocutory appeals, ***timely requests for certification are calculated in days, not months***. *See, e.g., Richardson*, 957 F.3d at 958 (two month delay made appeal untimely); *Morton College Bd. of Trustees v. Town of Cicero*, 25 F.Supp.2d 882, 883 (N.D.Ill.1998) (thirty day delay was untimely); *see also Filbern v. Habitat for Humanity, Inc.*, 57 F.Supp.2d 833, 836 (W.D.Mo.1999) (request for interlocutory appeal filed at same time as motion to dismiss). ***Here, Defendants waited forty-six days after the filing of the Motion to Reconsider without any explanation or excuse. Thus, the Court finds Defendant's delay is untimely***, but even if timely, as discussed below, unwarranted.

Fabricant, 2001 WL 883303 *1 [emphasis added].

Similarly, other district courts, both inside and outside the 11th Circuit, have denied similar 28 U.S.C. § 1292(b) requests as untimely. *See, e.g.,* Robinson v. First Family Financial Services of Georgia, Inc., 2007 WL 9703170 (N.D. Ga.) (two-and-a-half months without explanation deemed untimely); In re Yasmin & Yaz Mktg., 2012 WL 662334, at * 1 (S.D.Ill. Feb. 29, 2012) (holding that a two-month delay was unreasonable); Lindley v. Life Investors Ins. Co. of Am., 2010 WL 2465515, at *2–3 (N.D. Okla. June 11, 2012) (holding the same for a two-and-a-half month delay); Morton College Bd. of Trustees of Illinois Community College Dist. No. 527 v. Town of Cicero, 25 F.Supp.2d 882, 884–85 (N.D.Ill.1998) (finding motion to certify order under § 1292(b) untimely when filed 30 days after the order sought to be appealed was entered).

Defendant offers no explanation or excuse for waiting fifty (50) days from when the Opinion and Order was filed before seeking certification for interlocutory appeal. Should the motion be granted, Omegra will no doubt be prejudiced once again, as yet another delay in the proceedings will force the parties to push pause on the most crucial step of the litigation thus far: discovery. More than seven months have passed since the Complaint was filed and not a single

document has changed hands between the parties, nor has an interrogatory been answered or a deposition been scheduled. Again, the pattern of conduct here is deliberate and easy to see: Defendant does not want this action to proceed to the discovery phase and is exhausting any and all efforts in order to prevent it from going there. But the untimeliness of the motion for certification alone should warrant its denial. It is time for this matter to proceed.

> ii. **An immediate appeal from the Court's Order will not materially advance the ultimate termination of litigation.**

Yet even if the Court finds that Defendant's motion was timely, the question that WFS suggests should be the focus of an interlocutory appeal is flawed and improperly skewed with the suggestion that plaintiff's claim is "simply" the result of a conflict in bunker samples. The pleadings to date clearly show that plaintiff has done much more that "simply" provide conflicting samples. Between notices to WFS, testing, and seeking out the facts to avoid the dire consequences that could result from a vessel operating with fuel unsuited for its operation, the flippant question presented does not relate to the actual controversy. Plaintiff outlined its fraud claim in the Complaint, addressed it in response to the motion to dismiss, and the Court correctly held that the Complaint satisfied the standard under the applicable law. The Court did not make any judgment on whether WFS committed a fraud in its decision on the motion to dismiss.

The question presented by WFS, seeking to minimize the claim for fraud, cannot and will not materially advance the ultimate termination of the litigation. *See* Harris v. Luckey, 918 F.2d 888, 892 (11th Cir.1991); *see also* Fabricant v. Sears Roebuck & Co., 2001 WL 883303 (S.D. Fla. 2001). The fraud count of the Complaint is not limited to conflicting samples. Plaintiff set out in detail the evidence supporting a claim for fraud (see D.E. 4, ¶¶ 12-21, 23, 42-47). Further, an appeal, if allowed to proceed, would prevent Omegra from advancing to the discovery phase,

which will be wholly necessary in order to develop a factual record before any ultimate decision on the fraud claim can be made.

Similar motions have been denied for similar reasons in the Southern District of Florida on more than one occasion:

> This Court concludes that discovery will be necessary in these actions before an ultimate decision can be made, on summary judgment or by trial, regarding whether federal law preempts any or all of the Plaintiffs' claims. Therefore, an immediate appeal would be particularly inappropriate because ***final resolution of the issues before this Court requires a complete factual record***. In *Fabricant*, Judge Nesbitt declined to certify an interlocutory appeal because ***the facts had not yet been determined through discovery***. *Fabricant v. Sears Roebuck & Co.*, 2001 WL 883303, at *2 (S.D.Fla. Jan.29, 2001) (holding that "interlocutory appeals of denials of a motion to dismiss are less likely to advance the ultimate termination of the litigation because the Court must assume that all the facts alleged in the complaint are true.") (internal citations omitted).

In re Checking Account Overdraft Litigation, 2010 WL 3377592 *2. Here, an identical result would come about. That is, even if the 11th Circuit were to find that fraud could not be inferred "simply from a conflict in bunker sample test results," (D.E. 47 at 16), discovery would still need to be completed in order for a complete factual record to be presented to the Court. Here, it is important to differentiate what this Court held versus the issue Defendant believes should be certified for interlocutory appeal. In terms of "inferring fraud," the Court reasoned as follows:

> Specifically, [the Amended Complaint] alleges that four fuel samples were tested and three of them revealed that the Bunkers were off specification. (Am. Compl. ¶¶ 14-17.) The WFS Terms and Conditions provide that in the event the bunkers are off specification, Defendant must replace the bunkers. (Id. ¶ 6(g).) The Amended Complaint alleges that the one sample that conclusively represents the quality of the bunkers—the "Supplier Sample"— just so happened to be the one sample that was on-specification for water, aluminum, and silicon. (Am. Compl. ¶¶ 14-17; WFS Terms and Conditions ¶ 6(b).) One could reasonably infer that Defendant knew that the bunkers delivered to the Vessel were off-specification, so Defendant provided a false sample of on-specification fuel to deceive Plaintiff into believing it had purchased on-specification fuel. One could further reasonably infer that Defendant intended Plaintiff to rely on the false sample, and the Amended Complaint plausibly alleges that Plaintiff did rely on this misrepresentation to its detriment by initially

>objecting to the Owners' request to debunker, which further disrupted and delayed operations.

(D.E. 47 at 26.) Contrary to what Defendant argues, the inference of fraud did not "simply [come] from a conflict in bunker sample test results." Rather, it came from the fact that the only test result that came back on specification just so happened to be the one that Defendant hangs its hat on as "conclusive and binding," despite the fact that *three* other samples showed that the Bunkers were off specification for the same reasons, and that the sample used by Defendant was not counter sealed by the vessel.

The appeal would thus be an unneeded delay in the litigation and delay the discovery of documents and witness testimony. Regardless of the answer to Defendant's question, Omegra's surviving claims would proceed. No material advancement would occur. The motion should be denied.

### iii. No compelling policy reason exists to support the Court exercising such discretion.

A defendant's speculative fear that one undecided claim may expose it, and an entire industry, to parallel claims is not a basis for dismissal or reconsideration, particularly if it may ultimately be proved to be liable. Here, Defendants joint-venturer, Sentek, has been charged with numerous fraud and corruption-related offenses related to bunker fuels in Singapore. *See Exhibit A, article from the Singapore Police regarding Sentek employees dated October 6, 2022*[1]; *Exhibit B, Article from Reuters dated October 2, 2020*[2]. If this Court adopted Defendant's argument here,

---

[1] Available at: https://www.police.gov.sg/media-room/news/20221005_three_bunker_clerks_charged_in_connection_to_shell_bukom_heist, last accessed on October 19, 2022.
[2] Available at: https://www.reuters.com/article/us-shell-oil-theft/founder-of-major-singapore-fuel-supplier-charged-in-shell-oil-heist-case-idUSKBN26N1KL, last accessed October 19, 2022.

then the ability for contractual parties and litigants to out fraudulent practices in the industry would be stifled.

Further, Defendant has offered no actual evidence, other than bald assertions that its "marine fuel sample testing clause is a dispute resolution mechanism that has been widely adopted in the maritime industry" (D.E. 47 at 1), to persuade the Court that any strong policy reasons exist for immediate appellate review. There is no evidence whatsoever. The 11th Circuit's answer to whether fraud may be inferred "simply from a conflict in bunker sample test results," (id. at 16) will do nothing to resolve this or other situations in which a seller of marine fuel or its physical supplier intentionally provide, or attempt to conceal, a false sample of marine fuel that was not taken from the marine fuel that was actually sold to its customer. If anything, granting this interlocutory appeal and affording Defendant the opportunity to avoid litigation simply by providing an on-specification sample of marine fuel from its physical supplier would *encourage* fraud and other deceptive practices from marine fuel sellers and physical suppliers, as there would be absolutely no recourse for the customer so long as the physical supplier's sample was on-specification.

In any event, it has long been the law in the state of Florida that a false statement concerning a material fact, the representor's knowledge that the representation is false, an intention that the representation induce another to act on it, and consequent injury by the party acting in reliance on the representation constitutes fraud. See Zamber v. American Airlines, Inc., 282 F. Supp.3d 1289, 1299 (S.D. Fla. 2017). The Court has already determined that the fact pattern as laid out in the Amended Complaint plausibly presents a claim for this very cause of action. Here, Omegra still has the opportunity and burden to prove these elements to the finder of fact at trial. No policy exception warrants a pause of the matter now. Defendant's motion should be denied.

## IV.   CONCLUSION

For all the aforementioned reasons, Defendant's Motion for Reconsideration and, Alternatively, Certification for Interlocutory Appeal should be denied in its entirety.

Dated: October 19, 2022

Respectfully submitted,

  //S//Jonathan S. Cooper, Esq.//
Jonathan S. Cooper
Florida Bar Number: 99376
jcooper@shiplawusa.com
Blanck & Cooper, PA
5730 SW 74th St. Ste. 700
Miami, FL 33143
Telephone: (305) 663-0177
Facsimile: (305) 663-0146

Local Counsel for Plaintiff
OMEGRA CORP SHIPPING PTE LTD.

**Timothy McGovern**
tim.mcgovern@zeilerfloydzad.com
Zeiler Floyd Zadkovich (US) LLP
500 West Madison Street, 10th floor
Chicago, Illinois 60661, USA
Telephone: (708) 320-0010

**Zachary Barger**
zach.barger@zeilerfloydzad.com
Zeiler Floyd Zadkovich (US) LLP
500 West Madison Street, 10th floor
Chicago, Illinois 60661, USA
Telephone: (708) 320-0010

Of Counsel for Plaintiff