UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| OMEGRA SHIPPING PTE LTD OF SINGAPORE,<br><br>      Plaintiff,<br><br>  v.<br><br>WORLD FUEL SERVICE (Singapore) PTE LTD,<br><br>      Defendant. | Civil Action No. 2022-cv-20531 |

**DEFENDANT'S EXPEDITED MOTION TO COMPEL**

Pursuant to Federal Rule of Civil Procedure 37(a), Defendant World Fuel Services (Singapore) PTE LTD ("WFS" or "Defendant") respectfully moves to compel discovery against Plaintiff Omegra Shipping PTE LTD of Singapore ("Omegra" or "Plaintiff"). WFS requests that the Court rule on this motion on an **expedited basis** by **Friday, September 15, 2023** because the parties' fact depositions are currently scheduled to commence on Tuesday, September 19 and fact discovery closes on Friday, September 22.

**PRELIMINARY STATEMENT**

Months ago, WFS timely served discovery requests on Omegra. In response, Omegra—the plaintiff in what has now become a fraud action against WFS for millions in damages—provided partial, evasive responses and produced just a handful of cherry-picked documents. When WFS pressed Omegra for additional materials, Omegra verbally conceded and assured WFS that it would do so with sufficient time to complete discovery. But after several delays on Omegra's end, its slim production (which now totals just over 50 emails, much of which are repetitive) remained materially deficient with obvious gaps. Additionally, Omegra's privilege log itself reflects Omegra

1

is withholding facially non-privileged materials. And after months of leading WFS on as if Omegra would resolve identified deficiencies, on September 5 (near the close of fact discovery), it took the position that it will not resolve those issues or provide any further information.

Regardless—Omegra's discovery tactics aside—Omegra is clearly withholding material evidence from discovery and should be compelled to produce. Relatedly, WFS should be allowed to, if necessary, continue Omegra's deposition after the close of fact discovery to question it regarding those new materials.

## BACKGROUND

### I.    Omegra Commences This Fraud Action And Engages In Evasive Discovery

Omegra commenced this action against WFS in February 2022. Omegra asserts that WFS defrauded it in connection with the sale of fuel for a vessel based simply on the fact that 3 out of 4 test results of certain fuel samples suggested that the fuel might have been off specification. From that, Omegra concludes fraud and vaguely claims millions in consequential damages.

Several months later in December 2022, while the parties were awaiting the Court's ruling on WFS' motion to certify an issue for interlocutory appeal, the parties exchanged discovery requests. On January 17, 2023, Omegra served its responses and objections. *See* **Exhibit A** (objections to document requests); **Exhibit B** (objections to interrogatories).

On January 24, WFS sent Omegra a letter identifying deficiencies in its responses and objections. *See* **Exhibit C**. On February 1, and before responding to WFS' discovery letter, Omegra produced approximately **47 documents** (21 emails with 26 of their attachments) amounting to **289 pages** (much of which included repeating materials).[1] Shortly thereafter, on February 6, the Court granted WFS' motion to certify an issue for interlocutory appeal and stayed

---

[1]    For context, WFS' first production was of **541 documents** amounting to over **1,600 pages**.

this case pending the Eleventh Circuit's ruling. DE 54 & 55. Several months later on June 20, after the Eleventh Circuit denied WFS' petition, the Court directed the parties to show cause why the stay should not be lifted. DE 57. In response, WFS and Omegra met and conferred on June 23, at which time Omegra indicated it would be providing WFS with additional discovery.

**II.     Omegra Leads WFS On As If It Would Resolve All Identified Discovery Deficiencies**

The Court subsequently lifted the stay, DE 60, and on July 24, amended the case schedule, DE 62. By that time, Omegra still had not amended its discovery responses or supplemented its document production and interrogatory answers. So, on July 26, WFS sent an email to Omegra reiterating the deficiencies in its discovery responses, including regarding specific clear gaps in Omegra's document production.

On August 2, WFS and Omegra again met and conferred, in which meeting the parties discussed every response and objection to WFS' interrogatories and document requests detailed in WFS' January 24 letter and July 26 email. Omegra agreed to amend its discovery responses and supplement its production and answers on all identified issues by August 16, as memorialized in a confirmation letter WFS sent to Omegra. *See* **Exhibit D**. The parties agreed that Omegra would produce these materials by August 16 so that WFS could have sufficient time to meaningfully prepare for the parties' only fact depositions, which were tentatively scheduled for the week of September 18 (the final week of fact discovery).

Despite Omegra initially assuring WFS that it would produce supplemental and amended responses, objections, answers, productions, and privilege log to resolve WFS' identified deficiencies by August 16, Omegra thereafter insisted it needed additional time. Omegra accordingly trickled in its supplemental materials over the following 2 weeks. On August 16, Omegra produced amended responses and objections to certain document requests. See **Exhibit E**. On August 21, Omegra produced amended answers and objections to certain interrogatories.

3

*See* **Exhibit F**. On August 24, Omegra produced just **63 "additional" documents** (33 emails with 30 of their attachments) amounting to **300 pages** (again, much of which includes repeating materials, and most of which are repeat of, or extensions to, the previously produced materials).[2] And on August 29, Omegra produced its privilege log. *See* **Exhibit G.**

Despite Omegra's then repeated assurances, its discovery responses remained materially deficient. Not only was Omegra's document production suspiciously slim, Omegra still had not produced any documents at all regarding various categories that it had previously assured WFS it would be producing. Likewise, Omegra's privilege log was facially deficient—from claiming privilege over materials that could not even theoretically be privileged to not providing sufficient information to allow WFS to evaluate Omegra's privilege claims. So between August 28 and September 1, WFS attempted to meet and confer on certain issues.

### III.  Omegra Makes Its True Intentions Clear At The Conclusion Of Fact Discovery

On September 5 (less than 3 weeks before the close of fact discovery and 2 weeks from the start of fact depositions), Omegra indicated that it stood by its current objections, would not be producing any further materials, and refused to provide any further information regarding discovery deficiencies. Regarding the latter, WFS had requested information on Omegra's new objection that it no longer had in its possession any documents regarding certain categories of issues relevant to this case, thus raising the specter of a potential failure to preserve material evidence amounting to spoliation. Omegra refused to provide *any* information.

In response, on September 7, WFS sent another discovery letter requesting that Omegra produce the clearly withheld documents, an amended privilege log, and information regarding why

---

[2]  It appears as if Omegra's second production was not directed at resolving any of WFS' concerns but, rather, was a supplemental production that Omegra always intended to make in connection with its privilege log after it reviewed certain materials for potential privilege claims.

4

Omegra no longer has certain evidence relevant to this case. *See* **Exhibit H**. WFS requested that Omegra produce those materials and information by September 11 because the parties' fact depositions are commencing on September 19 and fact discovery closes on September 22.

On September 8, Omegra objected, disagreeing with "most, if not all," of WFS' positions, and claiming it needed additional time to prepare a response.

On September 9, WFS insisted that it needed this resolved by September 11 because, among other things, WFS was already placed in a prejudicial, untenable position and any further delay from presenting this dispute to the Court would force WFS to file the instant motion on an emergency basis rather than on an expedited basis, which would unnecessarily burden the Court (not to mention the parties).

On September 11, Omegra indicated that it would now produce certain (still unspecified) documents that it had mistakenly designated as privileged and would provide certain responses (not documents) regarding other issues.

***

Given the impasse between the parties requiring judicial intervention and the fast approaching deadlines, this motion should be granted on an expedited basis.

## ARGUMENT

**I.     Omegra Should Be Compelled To Produce Withheld Documents**

A party should be compelled to produce nonprivileged documents where the documents are responsive to timely discovery requests and are otherwise "relevant" and "proportional" to a "claim or defense." *See* Fed. R. Civ. P. 37(a)(3)(B)(iv). Likewise, an "evasive or incomplete" production "must be treated as a failure" to produce. *Id.* 37(a)(3)(4).

WFS served document requests on Omegra, including for documents regarding the at-issue fuel, at-issue fuel samples, other fuel purchased for or consumed by the at-issue vessel, and Omegra's damages (such as invoices and receipts). *See* Ex. A ¶¶ 1, 2, 6, 8.

Omegra initially refused to produce documents regarding the at-issue fuel (the very heart of this case) and other fuel (material to, among other things, WFS' failure to mitigate defense and Omegra's claimed damages). *See id.* ¶¶ 1, 6. During conferral, Omegra agreed that these materials were relevant and discoverable. *See* Ex. C & D. Nevertheless, Omegra ultimately objected again on relevance grounds to RFP 6, and, for the first time, claimed that it actually no longer has in its possession documents regarding other fuel during the relevant time period. *See* Ex. E ¶ 6.

Moreover, Omegra's approximately 50-email production (in its case where it claims millions in consequential damages as a result of fraud) is facially deficient in a way that clearly reflects Omegra is withholding material documents. To date, after repeated and apparently hollow conferrals, Omegra has failed to produce at least any of the following documents:

1. Documents (such as invoices, receipts, or other proof of payments) supporting Omegra's claimed damages;[3]
2. Documents (such as invoices, receipts, or other proof of payments) reflecting sums or credits Omegra earned relating to the at-issue fuel (which would off-set Omegra's claimed damages);
3. Internal documents at Omegra;[4]

---

[3]   In connection with its document response, Omegra produced a "Schedule of Losses" that it prepared for this lawsuit. That document is not evidence. Moreover, that document does not reflect any income Omegra earned that would offset its damages (specifically in connection with the resale of the fuel). During conferral, Omegra agreed to produce an Amended Schedule of Losses to reflect its income earned along with documents supporting the line items. *See* Ex. D. To date, Omegra has not produced those documents or an Amended Schedule of Losses.

[4]   Omegra only produced emails and their attachments. And all of those emails are either with, or entirely from, third parties (such as Omegra's lawyers, the at-issue vessel owners, consultants, *etc.*). Omegra did not produce a single purely internal document or communication.

4. Documents and communications relating to the arbitration proceeding initiated by Omegra against the at-issue vessel owners in early November 2021 regarding the instant dispute;

5. Documents and communications relating to other fuel that Omegra purchased for, or was otherwise consumed by, the vessel (such as contracts, fuel sample test results, invoices, receipts, *etc*.);

6. Communications with the vessel owners after November 11, 2021; and

7. The various subsidiary emails within produced email chains (including with the vessel owners)—particularly where that subsidiary email contains attachments (attachments that were not produced).

In light of the above, Omegra should be ordered to produce all nonprivileged, responsive documents (including, but not limited to, the above) in its possession, custody, or control by September 25. And to the extent Omegra now contends it no longer has those materials, it should be ordered to describe in detail and under penalty of perjury precisely why.

**II.     Omegra Should Be Compelled To Produce An Amended Privilege Log**

Omegra's Privilege Log, attached as **Exhibit G**, is wholly inadequate and deficient. *First*, Omegra asserts privilege over all attachments to emails that it claims are privileged communications without identifying the document in any way and without providing any basis as to why the document itself is privileged. *See* Ex. G at 61–87. A document attached to an email does not become privileged itself just because the email to which it is attached is privileged. Absent independent justification for each of these attachments being privileged—which Omegra has not provided—none of these attachments are privileged, and Omegra needs to produce all of them.

*Second*, an overwhelming number of the supposedly privileged emails are facially not privileged, but are notated as "Privileged-Withhold" as "Legal Advice and/or communications related to the agreements between the parties." These emails include a great many from third parties to Omegra such as (and by no means limited to) testing laboratories, surveyors, the vessel owners and operators, logistics companies, owners' consultants, witnesses to the testing of the

samples, the arbitrators presiding over Omegra's arbitration proceeding against the vessel owners, **and even WFS** (among others). *See generally id.* at 1–61.

Further, even if those documents could have been privileged (they quite clearly are not), such privilege was waived, thus further calling into question Omegra's overbroad Privilege Log. Omegra has placed the materials and relationships with those third parties at issue in this case and has even already produced some of the logged documents.[5]

Omegra should accordingly produce an Amended Privilege Log (in a sortable Excel Spreadsheet format rather than PDF) providing additional information to enable WFS to assess its privilege claims. Omegra should also produce currently withheld documents with third parties (including those identified above).[6]

### III. WFS Should Be Allowed To Continue Omegra's Deposition After Fact Discovery

Fact discovery is currently set to close on September 22. In light of the above, and based on a September 25 final discovery production from Omegra, WFS respectfully requests that, if necessary, it be permitted to continue the currently noticed fact deposition of Omegra's 30(b)(6) representative and key fact witness Steven Goh so that it may address any newly produced documents at an additional date no later than October 27. That would give WFS approximately 5 weeks to review the new documents, ensure there are no further material deficiencies, prepare for, and continue Omegra's depositions.

---

[5] To be clear, the bulk of these facially unprivileged materials are not produced elsewhere in Omegra's production, such as (and by no means limited to) emails between Omegra, on the one hand, and the arbitrators or the vessel owners, on the other.

[6] A few hours before filing this motion, Omegra indicated that it intended to produce certain—still unidentified—documents that it is currently claiming are privileged.

8

## CONCLUSION

For the reasons discussed above, WFS respectfully requests an order directing Omegra to produce by **September 25** (1) all responsive, nonprivileged documents (along with an Amended Schedule of Losses); (2) a declaration describing in detail why it no longer has certain documents (to the extent Omegra contends it no longer has documents); and (3) an amended privilege log. Additionally, WFS respectfully requests that it be allowed to continue the deposition of Omegra's 30(b)(6) representative and key fact witness Steven Goh to no later than **October 27**. Finally, WFS requests its reasonable expenses and attorney's fees under Fed. R. Civ. P. 37(a)(5)(A) incurred in connection with this motion, along with any other relief this Court deems just and appropriate.

## Local Rule 7.1(d)(2) Expedited Motion Basis

Local Rule 7.1(d) allows the Court to "waive the time requirements of this Local Rule" and grant expedited relief on "any matter requiring such expedited procedure." ***Here, WFS respectfully seeks an expedited ruling by Friday, September 15, 2023***. Fact depositions commence on Tuesday, September 19, and such depositions will be materially compromised without a full production of documents and information by Omegra. Likewise, fact discovery closes on September 22. Additionally, WFS was unable to bring this motion any earlier because, as described above, at least over a month ago, Omegra had previously assured WFS that it would resolve issues identified in this motion first by mid-August and then by late-August. By late August, those issues remained and new issues arose. And on September 5, Omegra stood by its current objections and refused to produce any additional materials or information, thus prompting this motion.

## Certificate of Conferral

In accordance with Local Rule 7.1(a)(3), undersigned counsel certifies that it conferred with Omegra's counsel about several of the issues in this motion for months by email and phone

as well as about the specific relief requested in this motion by letter and email on September 7, 8, 9, and 11. Omegra has opposed or evaded the issues identified in this motion. That said, most recently on September 11, Omegra's counsel indicated it will now produce some unspecified materials currently notated in its privilege log and will provide additional information on September 12. WFS will attempt to continue to confer and inform the Court if it is able to narrow the issues, but, as noted above, seeks expedited relief given the instant posture and timing.

Dated: September 11, 2023

Respectfully submitted,

**HOLLAND & KNIGHT LLP**
By: /s/ *Adolfo E. Jiménez*
Adolfo E. Jimenez
Florida Bar No. 869295
Gabriel Godoy-Dalmau
Florida Bar No. 1036181
Douglas Lehtinen
Florida Bar No. 0126452
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 789-7720
Adolfo.Jimenez@hklaw.com
Gabriel.Godoy-Dalmau@hklaw.com
Douglas.Lehtinen@hklaw.com

Robert Denig (admitted pro hac vice)
31 W. 52nd St. 12th Fl.
New York, NY 10019
Telephone: (212) 513-3200
Robert.Denig@hklaw.com

*Attorneys for Defendant*
*World Fuel Services (Singapore) PTE LTD*