UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| OMEGRA SHIPPING PTE LTD OF SINGAPORE,<br><br>         Plaintiff,<br><br> v.<br><br>WORLD FUEL SERVICES (Singapore) PTE LTD,<br><br>         Defendant. | Civil Action No. 2022-cv-20531<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT WORLD FUEL SERVICES' REPLY
IN SUPPORT OF ITS MOTION FOR SANCTIONS**

WFS respectfully submits this reply in further support of its Motion for Sanctions (DE 73) ("Motion"), and in response to Omegra's Opposition (DE 83) ("Opp.").

## PRELIMINARY STATEMENT

The thrust of Omegra's Opposition is an attempt to deflect the Court's attention from the specific misconduct addressed in the Motion. Omegra provides no reasonable explanation for its concealment of the arbitration proceedings against the Owners, nor for its false statements of fact. Several of the Motion's issues go un-responded to (such as Omegra's misrepresentations regarding a purportedly "missing" Vessel seal that Omegra knew was never missing), and Omegra misrepresents controlling law and WFS' positions. Instead of explaining Omegra's version of events and providing a full accounting of the arbitration, Omegra continues to engage in the same misconduct at issue in the Motion. Indeed, Omegra's few substantive responses are based entirely on additional misrepresentations, such as Omegra's claim that the arbitration does not relate to the quality of the fuel and was only about drawing samples from the vessel's tanks. That, despite Omegra litigating the "merits" of a "quality" claim against Owners and filing *at least two* other unrelated motions beyond seeking to draw tank samples. For these and other reasons discussed below, this Motion should be granted and Omegra as well as its counsel should be sanctioned.

## ARGUMENT

### I. The Court Is Authorized To Assess Sanctions, Including Dismissal And Fees

Sanctions should be imposed under Rule 12(f), Rule 11, 28 U.S.C. § 1927, this Court's inherent authority to address fraud on the court, and judicial estoppel. Motion at 6–8. Omegra has (1) maintained material positions at odds with its pending arbitration in a way calculated to make a "mockery of the judicial system," (2) made material misrepresentations to this Court, and (3) otherwise litigated in bad faith, *id.* at 8, and the Opposition arguments do not answer these issues.

1

First, despite WFS detailing the legal (*id.* at 1, 6–8) and factual (*id.* at 9–19) bases for its Motion, and despite Omegra recognizing the Court is authorized to impose sanctions under those legal bases (Opp. at 8-10), Omegra in the same breath claims WFS has not clearly articulated under what bases it seeks sanctions (*id.* at 3). That is demonstrably false.

Second, Omegra similarly misrepresents WFS' arguments. WFS did not "change its tune" at the December 1, 2023 hearing, nor did WFS ever claim its Motion is only (or even primarily) based on Rule 11. *Id.* WFS has maintained that Rule 11 is *one* of the bases for sanctions, and it thus complied with Rule 11's requirements. That does not mean this is *only* a Rule 11 Motion.

In fact, the main thrust of WFS' Motion is to remedy a fraud on the court arising in part from Omegra's contradictory positions—the full scope of which Omegra continues to conceal. Indeed, although all of the misconduct addressed in the Motion is itself sanctionable, it was WFS' discovery of these contradictory positions at the close of fact discovery in the face of Omegra's repeated concealment that forced WFS to bring this matter to the Court's attention.

Third, Omegra argues striking is unwarranted because WFS did not identify what allegations are at issue. *Id.* at 9. That is wrong. The entire Motion discusses knowingly false allegations that are contrary to Omegra's arbitration positions, including Omegra's reliance on the Vessel's retained/created off-spec samples (VISWA, CCIC 1, and CCIC 2), and its claim that the Supplier Sample was missing a Vessel seal. Compl. ¶ 14-20.

Finally, Omegra also makes a lengthy argument that *Allapattah Serv., Inc. v. Exxon Corp.* is distinguishable, attempting to limit that case to its specific facts and posture. Opp. at 19. But *Allapattah* clearly articulates the *general* standards applicable to this case. 372 F. Supp. 2d 1344, 1369–76 (S.D. Fla. 2005). And the court there entered sanctions because, like here, the party had taken contradictory positions in ways that reflected it was manipulating the judicial system,

2

including representing facts it knew were false and other facts it had "reason to believe" were false, engaging in litigation conduct that reflected it was intentionally attempting to delay proceedings, and having a motive to prolong the proceedings to gain an upper hand in related proceedings. *Id.*

## II.     Omegra Represented There Was A Missing Seal It Knew Was Not Missing

Omegra has maintained that this Court can infer fraud on the part of WFS because the Supplier Sample was missing a Vessel seal at testing that was placed on the sample at delivery. Motion at 12-13. But Omegra has been maintaining the opposite position in its arbitration since before it commenced this lawsuit. *Id.* at 13. And with good reason—the only people involved at sealing (Omegra's and Owners' representatives) told Omegra the Vessel seal was never placed on the sample. *Id.* Omegra concealed this information in a clear attempt to skirt WFS' motion to dismiss, reconsideration regarding same, and petition for interlocutory appeal regarding same. Yet Omegra does not respond to, let alone answer, this issue, thus conceding it.

## III.    Omegra Continues To Conceal Its Arbitration

In response to this Court's order and WFS' discovery requests, Omegra represented that there were no related proceedings. *Id.* at 14-15. But Omegra *has* challenged the validity and representativeness of the fuel samples in an arbitration against the Owners (the exact opposite position it has taken here). *Id.* at 10-12; Exh. A; Exh. F at OMEGRA001162.10-1162.14. And Omegra does not dispute it has a pending arbitration against the Owners. Instead, it dodges and downplays the arbitration by arguing it never needed to disclose those proceedings. That is wrong.

First, this Court directed the parties to comply with various disclosure requirements. Motion at 14; DE 22 at 2–3. That order expressly advised it was *broader* than the default rules. DE 22 at 2 (corporate disclosure "exceeds the scope" of Rule 7.1). Regarding related cases, and contrary to Omegra's assertions (Opp. at 15–16), the Court unequivocally required with no

qualifications that, beyond S.D. Fla. IOP § 2.15.00, the parties "specifically" needed to disclose "any action that concerns substantially similar factual allegations and legal issues." Motion at 15. And most critically, in Omegra's actual disclosure, it broadly and unequivocally stated it knew of no related proceedings. *Id.* Period. No IOP § 2.15.00 qualifications, as Omegra now asserts.

Second, WFS requested documents regarding the at-issue fuel, fuel samples, disputes with Owners—all of which embrace the arbitration. *Id.* Initially, Omegra agreed to produce such materials during meet and confer. DE 66 at 3; DE 66-4. Then, after it claimed there were no such materials, Omegra represented to this Court, in response to WFS' motion to compel, that it had previously refused to produce arbitration documents under a confidentiality objection. DE 69 at 7-8. But Omegra never made such a refusal or objection (an objection that in any event would have been baseless). DE 70 at 2-3. Now, Omegra argues the arbitration was simply not responsive to any request by WFS. Opp. at 5 n.4, 15–16. That is demonstrably wrong, and these repeatedly changing positions are themselves indicative of Omegra's manipulation of the record.

Regarding Omegra's most recent position, Omegra is claiming the arbitration does not relate to the "quality" of the fuel such that it was not responsive to any request. *Id.* at 13. Instead, relying on the Nicolau Declaration, Omegra claims the arbitration was simply a motion to compel it filed in early November 2021 against Owners so it could draw fuel samples from the Vessel's tanks. *Id.* As an initial matter, setting aside WFS' Request 7, Omegra's proffer still falls squarely within several of WFS' requests, including Requests 1 and 2. Nevertheless, Omegra's current position is at odds with the few documents it did produce. Directly contrary to Omegra's current claims and Mr. Nicolau's sworn statements, Omegra made *at least two* separate motions (a second, different motion to compel and a motion for fees) (Exh. A); the arbitration addresses "any and all" disputes between Omegra and Owners (Exh. B; Exh. C; Exh. D; Exh. E); Omegra is litigating the

4

arbitration on its "merits" beyond ancillary motions (Exh. A; DE 73-2 at OMEGRA000915.03, 915.08-915.12; DE 73-7); the arbitration's dispute concerns the fuel's on-spec/off-spec "quality" (and whether it could be "consumed") (*id.*; Exh. F at OMEGRA001162.10-1162.14), and the arbitration is currently stayed pending the outcome of this lawsuit (a quality dispute) (DE 74-1 at ¶ 10), which all indicates that the arbitration is directed at the quality of the fuel. This shows that the Nicolau Declaration is a sham proffered in furtherance of Omegra's fraud on the court.

Finally, Omegra's suggestion of an *in camera* review is improper. Opp. at 16. Without the adversarial process on this issue, an *in camera* review would do nothing but further Omegra's fraud on the court. Moreover, Omegra has not provided a single reason why documents cannot be reviewed by WFS as well. The mere fact the arbitration is not public is grossly insufficient.

IV. **Omegra Is Taking Contradictory Positions Regarding The 3 Off-Spec Samples**

Omegra claims in the present dispute that 3 off-spec samples are representative of the fuel, while (1) claiming in arbitration those samples are not representative, (2) having highly good reason to believe its arbitration position, and, as discussed, (3) concealing these contradictory positions in a way that makes a mockery of the judicial system. Motion at 9-15.

Omegra does not dispute that it has taken contradictory positions in this respect to 2 of the samples (VISWA and CCIC 1). Nor does it dispute that it (repeatedly) testified under oath that it is taking a contradictory position regarding the third sample (CCIC 2). Omegra does not dispute that it began taking those contradictory positions before it sued WFS, nor that when it began taking those positions, it had overwhelmingly good reason to believe its arbitration positions. Opp. at 12-13. Instead, Omegra asserts it should not be sanctioned because its corporate representative was simply mistaken about the arbitration, and it has since conducted an "investigation" that caused it to change its positions. *Id.* at 12. The former is wrong, and the latter is unsupported.

First, regarding the former, Omegra did not equivocate. Omegra repeatedly confirmed that the arbitration proceeding had been commenced due to a wrong, unreliable sample being presented for testing. Motion at 10. This testimony is not "cherry-picked" or "mischaracterized." Opp. at 6. It was consistent and repeated. Indeed, WFS urges the Court to review Omegra's 30(b)(6) deposition transcript in its entirety, which reflects the type of conduct at issue in the Motion.

Moreover, (1) the arbitration was expressly noticed as a 30(b)(6) topic and Omegra did not object to it (despite this Court's rules requiring objections to noticed topics be made ahead of time); (2) this topic was one of the few issues the representative actually spoke affirmatively on without completely evading WFS' questions; (3) the representative had multiple opportunities to clarify his testimony, but he continued to repeat and confirm his testimony; (4) Omegra had an opportunity to correct the testimony through an errata sheet (which was due after WFS served the draft Motion such that it had notice of this issue), but did not do so (even after WFS requested an errata sheet be submitted for the deposition and supplied its own corrections); and (5) Omegra and its counsel had an affirmative obligation to correct knowingly untrue testimony. Yet Omegra would have this Court completely disregard its sworn under penalty of perjury testimony in favor of a sham declaration unsupported by actual documentary evidence.

Second, regarding Omegra's "investigation," Omegra does not point to a single thing it discovered between when it began taking its arbitration positions and today. Nor could it. The reliability (or lack thereof) of the VISWA and CCIC 1 samples lies in whether they were drawn in the appropriate manner at the same time from the same cubitainer as the five samples that were filled in the supplier-provided bottles. The reliability of those two samples does not change in the slightest regardless of how CCIC 2 tested, which is the only event that occurred between the commencement of the initial "motion to compel" arbitration in early November 2021 and the later

6

conclusion by Omegra that all 3 off-spec samples were suddenly representative of the fuel delivered by WFS. Even after CCIC 2, Omegra continued to maintain against Owners (and during the arbitration) that the fuel was on-specification, the 3 off-spec samples were not representative of the delivered fuel, and the fuel was consumable. Exh. A; Exh. F at OMEGRA001162.10-1162.14. Omegra also took issue with Owners during the removal of the fuel, retesting those samples because of various de-bunkering irregularities, and for good reason—these issues and those identified before CCIC 2 further cemented Omegra's claims against Owners (not WFS). Exh. A. And *just one month ago*, Omegra's expert witness who was present at sampling testified that CCIC 1 is not representative of the fuel delivered to the vessel. Exh. G at 126:9-19, 129:16-24.

Rather, the specific arguments Omegra has adopted in this case (including from Mike Liu) were the exact same positions Owners advanced against Omegra in the arbitration that Omegra rejected (based on expert advice from Mike Liu). Motion at 9-13. Omegra adopted Owners' positions after staying its arbitration against them pending the outcome of this case. Omegra may settle or recover from WFS, and Omegra has developed a factual record that would have been more difficult otherwise. *That* is the "better position" Omegra stands to develop through this action. Opp. at 19 (asserting Omegra does not have any benefit in taking inconsistent positions). Even had Omegra discovered some yet-to-be identified "additional information" (*id.* at 13), that does nothing to excuse its *concealment* of facts and contradictory positions and its making of false statements of fact. Again, this Motion is not about the merits of Omegra's claims, but the way in which Omegra has litigated this case.

**V.    WFS' Motion For Sanctions Must Be Adjudicated Now**

Motions for sanctions must be addressed as soon as possible after the relevant record closes. *Ezell v. Lincoln Elec. Co.*, 119 F.R.D. 645, 647 (S.D. Miss.), aff'd, 863 F.2d 880 (5th Cir.

7

1988) (holding that where the relevant factual record is closed for a motion for sanctions, including one that references pleadings, it should be adjudicated immediately); Wright & Miller, 5A Fed. Prac. Proc. § 1337.1 (4th ed. 2019). That record closes at the occurrence of the at-issue misconduct. The only exception is where the motion is based on Rule 11 and takes issue not with litigation misconduct, but with the "initiation" of the action itself: where the defendant argues the entire action should never have been filed in the first place. That sort of Rule 11 motion necessarily needs to wait until the end of the case (and only assuming the plaintiff loses) before the court can address the motion. *See Almeida v. Bennet Auto Supply, Inc.*, 335 F.R.D. 463, 466 (S.D. Fla. 2020).

That *Almeida* exception does not apply here. This Motion is far broader than Rule 11. But even under Rule 11, this Motion is *not* about whether it was reasonable for Omegra to initiate this action. The Motion is about the way in which Omegra has presented and otherwise litigated the lawsuit: (1) taking contradictory positions at odds with its arbitration in a way reflecting it is making a mockery of the judicial system; (2) making material misrepresentations to the Court; and (3) otherwise litigating in bad faith. It is that litigation misconduct that has been sanctionable. And those issues need to be addressed now. Otherwise, a plaintiff could say and do whatever they want in a lawsuit so long as they either win at the end or settle before the court imposes sanctions. That cannot be condoned. Omegra's contentions to the contrary (Opp. at 9-10) are founded on a complete mis-framing of the actual issues raised in the Motion.

Relatedly, Omegra's lengthy discussion about why it believes its case will ultimately be meritorious is completely irrelevant. *Id.* at 11-14, 16-19. To be clear, none of the lay or expert opinions to which Omegra refers hold any sort of probative value to raise a triable question of fact. But whether Omegra has legitimate reasons to believe WFS engaged in fraud does not in any way justify or excuse Omegra's serious misconduct. Again, a plaintiff cannot say and do whatever it

wants simply in the hopes that it wins or settles before it gets sanctioned. Such an approach would encourage (not discourage) the type of behavior prohibited by the numerous rules regarding ethics for parties and counsel in litigation, including Rule 11.

Finally, conspicuously absent from Omegra's Opposition is reference to *anything* that it did not already have access to, discuss, or know about since long before it even initiated this action, despite Omegra successfully having claimed it needed to finish conducting all of discovery before it could in any way respond to the Motion. DE 75 at 3-5. *See also* DE 20 at 14-15.

**VI.     Omegra Attempts To Dodge The Merits Of This Motion**

As noted above, Omegra does not actually respond to most of the Motion. Instead, Omegra seeks to deflect on numerous grounds, none of which are valid. First, Omegra portrays itself as acting with the utmost integrity whereas *WFS* has engaged in gamesmanship. Opp. at 3 n.1, 5 n.3. Omegra points to WFS' motion for reconsideration (which was partially granted), WFS' discretionary petition for interlocutory appeal (that this Court certified),[1] WFS' motion to compel (which was denied only after Omegra—in response to that motion—document dumped clearly responsive and unprivileged materials it had concealed for months and wrongfully parked in a late-filed privilege log), and WFS' facially meritorious objections required by this Court to Omegra's deposition notices (that Omegra had served only a few days prior), and in which WFS expressly sought conferral to resolve any disputes (conferrals that Omegra did not accept). *Id.* Omegra was not "prejudiced"—it litigated WFS' good faith, colorable positions as a matter of course.

Second, Omegra seeks to strike the Motion because WFS filed a Notice Of Conferral (DE 74) ("Conferral Notice"). Opp. at 8 n.6, 20. Omegra similarly seeks to strike the Conferral Notice.

---

[1] WFS did not "wholly ignore" this Court's certified question. Opp. at 4. WFS acknowledged the Court's certified question and requested the Circuit address a broader question. DE 56-1 at 12-13.

9

*Id.* But the Motion (which is broader than Rule 11) does not rely on the Conferral Notice. WFS submitted a further explanation of what transpired during meet and confer after it served the motion (which is identical to the filed Motion for Sanctions). The Conferral Notice also discussed the specific arguments Omegra presented to WFS, and that WFS presented to Omegra, during meet and confer. That detail regarding meet and confer was necessary given the gravity of the Motion, and explains why Mr. Nicolaou's declaration did not resolve (in the least) the issues in the Motions. Had WFS not provided the Conferral Notice, Omegra would have accused WFS of failing to meet and confer in good faith, and argued that WFS did not reasonably consider Mr. Nicolaou's declaration. There is no justification for any strike.

Third, Omegra asserts that WFS knew about the issues present in the Motion for months. Opp. at 2. That is not true. Although some of the approximately 25 emails Omegra produced in February 2023 referenced threats of an arbitration, WFS did not receive the substantive arbitration materials (produced in Omegra's post-motion-to-compel document dump) and take Omegra's 30(b)(6) deposition until the close of fact discovery a few weeks before WFS served the Motion on Omegra. And it was in those materials and deposition that WFS learned that Omegra had in fact been taking contradictory positions it had been concealing from the Court. Motion at 9-13.

Finally, WFS did not give Omegra an "ultimatum" during conferral. Opp. at 7. Upon serving the motion, WFS immediately sought to meet and confer in the hopes that Omegra would either explain (in detail and with actual proof) its version of events that genuinely clarified the record, to fall on its sword and negotiate a way forward, or dismiss its claims. Omegra did neither.

## CONCLUSION

For the reasons discussed above, sanctions should be imposed on both Omegra and its counsel, including dismissal and fees, as well as any other relief the Court deems just and proper.

**Request For Hearing**

Pursuant to Local Rule 7.1(b)(2), WFS respectfully renews its request for oral argument on the Motion. Omegra does not oppose this request. *See* Opp. (not responding to request).

Dated: January 5, 2024

                Respectfully submitted,

**HOLLAND & KNIGHT LLP**
By: /s/ *Adolfo E. Jiménez*
Adolfo E. Jiménez
Florida Bar No. 869295
Gabriel Godoy-Dalmau
Florida Bar No. 1036181
Douglas Lehtinen
Florida Bar No. 0126452
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 789-7720
Adolfo.Jimenez@hklaw.com
Gabriel.Godoy-Dalmau@hklaw.com
Douglas.Lehtinen@hklaw.com

Robert Denig (admitted pro hac vice)
31 W. 52nd St. 12th Fl.
New York, NY 10019
Telephone: (212) 513-3200
Robert.Denig@hklaw.com

*Attorneys for Defendant*
*World Fuel Services (Singapore) PTE LTD*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2024, a true and correct copy of the foregoing was filed with the Clerk of Court via the Court's CM/ECF system, which shall serve a copy of same upon counsel for Plaintiff.

                */s/ Adolfo Jiménez*