UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 2022-cv-20531-JAL

OMEGRA SHIPPING PTE LTD OF SINGAPORE,

        Plaintiff,

v.

WORLD FUEL SERVICES (Singapore)
PTE LTD,

        Defendant.            /

**PLAINTIFF'S EMERGENCY MOTION TO STRIKE
DEFENDANT'S WITNESS LIST FOR THE FEBRUARY 1, 2024
HEARING AND FOR A PROTECTIVE ORDER PROHIBITING DFENDANT
<u>FROM IDENTIFYING OR CALLING OPPOSING COUNSEL AS WITNESSES</u>**

NOW COMES Plaintiff, Omegra Shipping Pte Ltd. of Singapore ("Omegra" or "Plaintiff"), by and through its undersigned counsel, and hereby moves this Court for an order striking "Defendant's Notice of Filing Witness List for February 1, 2024 Evidentiary Hearing" [D.E. 92] and the corresponding "Witness List" [D.E. 92-1] for the hearing on February 1, 2024 [D.E. 85] related to Defendant's motion for sanctions [D.E. 73].

This motion is made on an emergency basis pursuant to Local Rule 7.1(d) with a ruling being requested before the currently scheduled February 1, 2024 hearing. It is needed before that date because, as more fully detailed in the memorandum that follows, World Fuel Services (Singapore) Pte Ltd ("Defendant") indicates in D.E. 92 and 92-1 that it intends to call Plaintiff's counsel as witnesses at this hearing. Plaintiff fails to explain the extraordinary circumstances – or any circumstances at all – that justify the lack of other means to obtain the information it requires,

Page 1 of 10

nor does it provide any indication of how this information would be in support of its motion for sanctions.

I.  **Background.**

This is an action related to marine fuel ("bunkers") sold by Defendant to Plaintiff for delivery in Singapore. Lab testing revealed that the bunkers failed to meet the required specifications of the sales contract. The parties could not resolve the dispute commercially, so Plaintiff sued Defendant in this Court, as required by Defendant's forum selection clause. [D.E. 4]. Defendant moved to dismiss the operative complaint. [D.E. 16]. Judge Lenard denied Defendant's motion related to breach of contract and fraud counts. [D.E. 43].

In response, months later Defendant filed a motion for reconsideration [D.E. 47], arguing that Judge Lenard's ruling was "not only clearly erroneous, but it also results in a manifest injustice to WFS and the larger maritime and bulk oil and commodities industries" in such a way that denying the motion to dismiss "decreas[ed] the overall stability in [the maritime and bulk oil and commodities] markets," and that it would "incentivize forum shopping, risk an increase in fraud, and adversely alter the maritime and bulk oil and commodities industries." [D.E. 47 at 5-8]. Judge Lenard noted that Defendant was "simply seeking to relitigate an issue that the Court has already carefully considered and decided…." [D.E. 54 at 9]. The Court saw through Defendant's puffed and exaggerated arguments, noting in its Order:

> Despite Defendant's Doom's Day prediction that the Court's Order will negatively impact the entire global shipping industry, it has completely failed to show that the Court's Order was erroneous….

[D.E. 54 at 10]. Notably, the global shipping industry does not appear to have suffered because of Judge Lenard's ruling.

Defendant also asked the Court to certify the following question for appeal: "May fraud be inferred simply from a conflict in bunker sample test results?" [D.E. 47 at 20]. The Court rejected the question presented by Defendant, but granted leave for Defendant to appeal based on the following question: "May fraud be inferred from a conflict in bunker sample test results where (a) four samples are tested, (b) three of the tested samples reveal that the bunkers are off-specification, and (c) the only sample that is on-specification is the sample that conclusively determines the quality of the bunkers?" [D.E. 54 at 13-14].

Defendant filed its Petition for Permission to Appeal on February 16, 2023. [D.E. 56-1]. Defendant asked the 11th Circuit to ignore the question certified by Judge Lenard and instead consider the question that was expressly rejected by Judge Lenard. [D.E. 56-1 at 12-13]. Omegra filed its opposition to the Petition on March 13, 2023. [USCA11 D.E. 12]. On May 17, 2023, the 11th Circuit denied Defendant's Petition. [USCA11 D.E. 16-2].

Defendant had exhausted all possible means of preventing the matter from proceeding to the merits, and therefore discovery commenced. As fact discovery was coming to an end, and fact witness depositions were mere days away, Defendant filed its Expedited Motion to Compel [D.E. 66] claiming alleged issues that Defendant had been aware of for months. The Court denied the motion and noted that "Defendant's failure to engage in meaningful conferral is particularly unreasonable in light of the fact that the disputed discovery responses were first served in January 2023." [D.E. 66]. Omegra was nonetheless prejudiced by both the timing and the substance of Defendant's expedited motion, having to allocate substantial time and resources to responding while concurrently preparing for depositions of corporate representatives before the court-imposed deadline.

On Sunday, September 17, 2023, Defendant's counsel emailed "Defendant's Objections to Plaintiff's 30(b)(6) Notice of Deposition" three days before the 30(b)(6) deposition of WFS was to occur. [D.E. 83-1]. Defendant's counsel objected to 12 of the 18 topics of inquiry, effectively seeking to avoid the very purpose of a Fed. R. Civ. P. 30(b)(6) deposition.

Once fact discovery closed, Omegra prepared its expert witness discovery to comply with the deadlines. Less than three weeks before expert depositions were scheduled to take place, Defendant filed its motion for sanctions against Plaintiff. [D.E. 73], accusing Omegra and its counsel of illegal and unethical conduct that (though denied by Omegra) Defendant claimed it had been aware of for months. Among other things, Defendant again seeks through this motion for sanctions a dismissal of the operative complaint without a determination of the case on the merits. Nonetheless, Defendant brought the Sanctions Motion at that time knowing full-well that Omegra's counsel would be forced to allocate significant time and resources to responding to it while concurrently preparing for expert-witness depositions.

With respect to the deposition of Defendant's expert, three days before that deposition was to take place, Defendant's counsel provided "Defendant's Responses and Objections to Plaintiff's Notice of Taking Deposition *Duces Tecum* of John S. Poulson" (Defendant's only expert witness), objecting to all four requests in the deposition notice.[1] Once again, this tactic sought to avoid the very purpose of this deposition.

This background is important and telling, exhibiting a pattern of conduct whereby Defendant's counsel seeks to distract Plaintiff's counsel during critical times of preparation. Defendant's latest attempt has necessitated this motion. As the Court knows, on February 1, 2024,

---

[1] The deposition objections are not being brought to the Court's attention for determination, but to exhibit a pattern of conduct by counsel for Defendant in this litigation.

the Court will hold a hearing on Defendant's motion for sanctions [D.E. 85]. On January 26, 2024, Defendant filed its Notice of Filing and Witness List for the hearing. [D.E. 92 and 92-1]. Defendant states that it "intends to call Steven Goh, Menelaos Nicolaou, Zachary Barger, and Timothy McGovern." [D.E. 92 at 1]. Defendant further states:

> WFS also recognizes that Mr. Barger and Mr. McGovern are Omegra's trial counsel. WFS expects they will be at the hearing and only intends to call Mr. Barger and Mr. McGovern if necessary given that their representations to the Court are at issue in this motion and they may be necessary witnesses depending on factual issues raised and to admit evidence.

*Id*. The vague identification of the possible intention (without identification of substance) for which Defendant may call opposing counsel at the hearing is not only factually and legally unsupported, but has also had the intended effect of distracting Plaintiff's counsel from necessary preparations for the hearing scheduled in just a few days. It is a further distraction from Plaintiff's preparation of a response to Defendant's motion for summary judgment [D.E. 90], which consists of *seventy-two* statements of material fact and *forty-eight* exhibits. [D.E. 89]. That response is due the day immediately following the hearing (February 2, 2024).

**II.    Counsel of record should only be called as witnesses in extraordinary circumstances.**

"It has been widely recognized that lawyers representing litigants should not be called as witnesses in trials involving those litigants if such testimony can be avoided consonant with the end of obtaining justice." *U.S. v. Alu*, 246 F.2d 29, 33 (2d Cir. 1957). "Permitting examination of opposing counsel as a witness 'is unusual and is normally justified only by extraordinary circumstances.' Such testimony may only be allowed if it is important and no other witness would be able to supply it." (internal citations omitted) *Batiste v. Jefferson Guaranty Bank*, 1992 WL 336766 at p. 1 (E.D. La. 1992). "The practice of calling opposing counsel as a witness is to be discouraged in all instances, save those where no other avenue is available." *Elmwood Village*

*Center v. Kmart Corporation*, 1994 WL 500945 at p. 1 (E.D. La. 1994) citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (noting the standard for deposing counsel in a matter).

In *Wilson Road Development Corporation v. Fronabarger Concreters, Inc.*, 2015 WL 269795 (E.D. Mo. 2015), Defendant moved the court to strike its attorney from opposing counsel's witness list and for a protective order preventing the attorney from being called to testify at trial. Noting the analysis of the 8th Circuit in *Shelton v. Am. Motors*, the court stated:

> In *Shelton*, the Eighth Circuit ruled that a party is forbidden from deposing opposing counsel, except where the party seeking the deposition proves that "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id*. (internal citation omitted). By logical extension, the *Shelton* rule also applies to determine whether an opposing counsel may be called as a witness at trial. The *Shelton* rule must apply with at least equal force at trial because, *inter alia*, many states' rules of professional conduct require that, absent special circumstances, an attorney is disqualified from acting as trial counsel whenever she or he is a necessary witness. Therefore, good cause exists both to strike the opposing counsel from the witness list and to issue a protective order preventing the party from calling the opposing counsel to testify unless that party produces evidence to satisfy each of the three prongs of the *Shelton* rule.

*Wilson Road Development*, 2015 WL 269795 at p. 1. The court noted that there was no demonstration regarding a lack of other means to obtain information required. The court granted the motion to strike and issued a protective order prohibiting opposing counsel from being called as a witness at trial. *Id*. at p. 2.

Indeed, courts have recognized that identification of opposing counsel as a witness can be used as a weapon for a motion to disqualify an adversary. "Courts view motions for disqualification with skepticism because they not only infringe on the freedom to choose counsel but can also be employed for tactical advantages." *Moore v. Pooches of Largo, Inc.*, 2021 WL 2954271 at p. 1 (M.D. Fla. 2021).

### III. Argument.

Defendant's tactic of identifying opposing counsel as potential witnesses for a sanctions hearing, or any other proceeding in this matter, simply cannot be condoned. The inclusion of Zach Barger and Timothy McGovern on Defendant's witness list has resulted in time and expense required to address the issue, restricting available time to prepare for the scheduled hearing on the sanctions motion filed by Defendant. Defendant's witness list should be stricken. Further, the Court should prohibit Defendant from attempting to call opposing counsel as witnesses in this matter.

#### A. Defendant cannot justify the identification of opposing counsel as witnesses on a motion it filed seeking sanctions against that same counsel.

Defendant filed the motion for sanctions at issue. It has the burden of proof. At the time of filing, it should have been in possession of proper evidence that formed a good faith basis for the motion and its allegations against counsel. Defendant now seeks to interfere with Plaintiff and its counsels' ability to defend against the motion in the hearing set for February 1, 2024 under the guise that opposing counsel "**may** be necessary witnesses" at the hearing. [D.E. 92 (emphasis added).] Since Defendant is not sure whether opposing counsels' testimony is even necessary, it cannot demonstrate that no other means are available to provide whatever evidence it *may* want to include in an argument.

Defendant fails to meet the *Shelton* test (identified above), which requires: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Though the hearing on Defendant's sanctions motion should require a higher standard ("The *Shelton* rule must apply with at least equal force at trial…), Defendant cannot meet the *Shelton*

standard in any event. Defendant has not made a showing that any information is unavailable except through its adversary's lawyers, that any information is relevant and nonprivileged, or that the information is crucial. If such were the case, Defendant should have sought the information during discovery, not on the eve of a hearing months after the closure of fact discovery. "The practice of calling opposing counsel as a witness is to be discouraged in all instances, save those where no other avenue is available." *Elmwood Village Center*, 1994 WL 500945 at p. 1 (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).

**B. Defendant's naming of opposing counsel as potential witnesses is a litigation tactic that seeks to create unnecessary ethical issues for counsel of record.**

Defendant's last-minute identification of counsel of record in a witness list is the exact type of tactic discouraged by courts nationwide. As this Court is aware, calling opposing counsel as a witness can lead to ethical considerations under R. Regul. FL. Bar 4-3.7(a). This rule "was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel." *Ballou v. Talari*, 2017 WL 11473692 at p. 2 (M.D. Fla. 2017).

**IV. Striking Defendant's witness list and prohibiting further attempts from Defendant's counsel to call Plaintiff's counsel as witnesses are appropriate and necessary remedies.**

Defendant's witness list for the hearing on its sanctions motion identifies four witnesses: (1) an employee of Omegra that resides in Singapore; (2) a London-based lawyer for Plaintiff; (3) Zach Barger, counsel of record for Omegra; and (4) Timothy McGovern, counsel of record for Omegra. Defendant acknowledges that two of the witnesses cannot be subpoenaed or compelled to testify. The only purpose for the presentation of Defendant's witness list was to distract counsel of record for Plaintiff and potentially provide foundation for Defendant to seek a motion to

disqualify counsel – both improper purposes. Defendant should be prohibited from calling any witnesses at the hearing on its motion.

Further, the pattern of conduct of Defendant's counsel requires an order prohibiting further attempts to turn Plaintiff's lawyers into witnesses. There is no justification for Defendant's tactic and certainly there has never been a request from Defendant to seek additional information to support a sanctions motion that has been fully briefed for nearly a month. "Permitting examination of opposing counsel as a witness 'is unusual and is normally justified only by extraordinary circumstances.'" *Jefferson Guaranty Bank*, 1992 WL 336766 at p. 1. There are no such extraordinary circumstances at issue here.

### V. Plaintiff requests emergency relief on this issue, as it impacts preparation for, and the conduct of the hearing scheduled for February 1, 2024.

The Court set Defendant's sanctions motion for hearing on February 1, 2024, mere days away. The implications regarding Defendant's witness list have, and will continue to impact, Plaintiff's ability to properly prepare for the hearing. Considering the gravity of Defendant's allegations in its sanctions motion, Plaintiff has been and will continue to be severely disadvantaged in its ability to defend against a motion that lacks any merit whatsoever. Plaintiff asks this Court for an expedited ruling on the instant motion therefore.

WHEREFORE, Plaintiff moves this Court to strike Defendant's witness list for the hearing on its sanctions motion [D.E. 92 and 92-1]. Further, Plaintiff seeks an Order of Protection prohibiting Defendant from attempting to call opposing counsel as witnesses in this matter. Plaintiff reserves the right to seek further and additional relief at an appropriate time.

### CERTIFICATE OF CONFERRAL

In accordance with Local Rule 7.1(a)(3), undersigned counsel certifies that it conferred with counsel for Defendant by telephone during the morning of January 29, 2024, but the parties

were unable to reach agreement on Defendant's inclusion of counsel as potential witnesses at February 1, 2024 hearing.

**Local Rule 7.1(d)(1) Certification**

After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

Dated: January 29, 2024

        Respectfully submitted,

        _//S//Jonathan S. Cooper, Esq.//_
        Jonathan S. Cooper
        Florida Bar Number: 99376
        jcooper@shiplawusa.com
        Blanck & Cooper, PA
        5730 SW 74th St. Ste. 700
        Miami, FL 33143
        Telephone: (305) 663-0177
        Facsimile: (305) 663-0146

        Local Counsel for Plaintiff
        OMEGRA SHIPPING PTE LTD OF SINGAPORE

**Timothy McGovern**
tim.mcgovern@zeilerfloydzad.com
Zeiler Floyd Zadkovich (US) LLP
53 West Jackson Boulevard, Ste. 1240
Chicago, Illinois 60604

**Zachary Barger**
zach.barger@zeilerfloydzad.com
Zeiler Floyd Zadkovich (US) LLP
53 West Jackson Boulevard, Ste. 1240
Chicago, Illinois 60604

Of Counsel for Plaintiff